POWERS v. CITY OF TROY

1. DISCOVERY—WORK PRODUCT—PROTECTION.
    Work product is protected whether prepared by the litigant himself, his attorney, surety, indemnitor or agent (GCR 1963, 306.2).

2. DISCOVERY — TRIAL PREPARATION MATERIALS — PRODUCTION — REQUIREMENTS.
    Trial preparation materials, whether prepared by the litigant, his attorney or representative, are subject to production only upon a showing of (1) good cause or cause and (2) inability to obtain the equivalent materials without undue hardship or that nonproduction will unfairly prejudice the party seeking production or cause him injustice (GCR 1963, 306.2, 310).

3. DISCOVERY—TRIAL PREPARATION MATERIALS—PRODUCTION—UNDERLYING PREMISES.
    Rules governing the production of trial preparation materials rest on the premises that (1) trial preparation materials are not absolutely privileged even if assembled by the litigant's attorney unless they concern confidential communications between attorney and client and (2) such materials, even if not assembled by the attorney but by the litigant himself or by some other person, are protected by a qualified immunity which

---

REFERENCES FOR POINTS IN HEADNOTES
[1-6] 23 Am Jur 2d, Depositions and Discovery § 195 et seq.
[7-9] 22 Am Jur 2d, Damages § 363 et seq.

obliges an opponent desiring discovery to show that he cannot, by reasonable exertion of his own efforts, obtain equivalent materials and that he, therefore, has, as it is variously expressed, "substantial need" or "cause" for their production, so that undue hardship is avoided (GCR 1963, 306.2, 310).

4. DISCOVERY—WORK PRODUCT—STATEMENTS—QUALIFIED IMMUNITY.
   Statements, except confidential statements by a client to his attorney, are not privileged; however, the statements, if obtained in anticipation of litigation or preparation for trial, are work product and are, therefore, cloaked with a qualified immunity without regard to whether prepared by the litigant's attorney or some other person and whether such other person was engaged by the attorney (GCR 1963, 306.2, 310).

5. DISCOVERY—WORK PRODUCT—STATEMENTS—PRODUCTION.
   Statements, other than privileged attorney-client statements, are subject to production upon a showing of cause (GCR 1963, 306.2, 310).

6. DISCOVERY — WORK PRODUCT — STATEMENTS — PRODUCTION — ADEQUATE CAUSE.
   Adequate cause for the production of a statement made, at the request of defendants' counsel, by the defendant driver, an employee of the defendant city, to an investigator for the city's liability insurer was shown where the statement might be useful in resolving a dispute over how the accident giving rise to the lawsuit had occurred because the plaintiffs alleged that the statement might contain admissions against interest and that the statement might be used to impeach defendant driver's credibility.

7. DAMAGES—VERDICTS—EXCESSIVE DAMAGES—STANDARD OF REVIEW.
   A verdict will not be set aside as excessive unless it is so excessive as to shock the judicial conscience.

8. DAMAGES—VERDICTS—EXCESSIVE DAMAGES.
   A jury verdict of $60,000 was not so excessive as to shock the judicial conscience where the plaintiff, aged 19 at the time of the accident, suffered a fracture of the left ankle, compound fractures of both bones of the right leg, had the tissue surrounding the fractures injured, had surgery performed, was in the hospital for two weeks, had to use crutches for five months, plaintiff stated, at the trial, held six months after the accident, that her right leg ached constantly and swelled up, that her left ankle was stiff and swelled up, that her right leg had to be elevated, and medical testimony was

introduced that plaintiff's conditions were permanent and that a miscarriage suffered by the plaintiff a few days after accident was caused by the accident.

9. DAMAGES—VERDICTS—EXCESSIVE VERDICTS.
   A verdict of $10,000, awarded to the plaintiff-husband, was not so excessive as to shock the judicial conscience where even though the husband did not testify, it was a permissible inference from the testimony of his wife, injured in an automobile accident, that he was deprived of his wife's services and consortium and, because of the permanent nature of her injuries, would, to some degree, be deprived of her services and consortium for the balance of her life.

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 January 7, 1970, at Lansing. (Docket No. 6,242.) Decided November 27, 1970.

Complaint by Hazel L. Powers and Jon Powers against the City of Troy and Alex Ventittelli for damages for injuries incurred in an automobile accident. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiffs.

*Patterson & Patterson, Barrett, Whitfield, Manikoff & White (Robert G. Waddell,* of counsel), for defendants.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

LEVIN, P. J. Plaintiff Hazel Powers was injured when an automobile she was driving collided with an automobile owned by defendant City of Troy which was being operated by defendant Alex Ventittelli. The defendants appeal a jury verdict of $60,000 in

favor of Hazel L. Powers and of $10,000 in favor of her husband, plaintiff Jon Powers.

The defendants contend:

I. the trial judge erred when he ordered them to produce a stenographic statement given by Ventittelli on November 2, 1962, four days after the accident, and

II. the amount of the verdict is excessive.

## I.

There were two trials. The first ended in a mistrial after the jury could not agree upon a verdict. A motion for discovery of the Ventittelli statement was denied before the first trial. After that trial the plaintiffs again, in May 1968, moved for discovery of the statement.

In support of their renewed discovery motion the plaintiffs argued that production of the Ventittelli statement should be ordered because there had been one mistrial as a result of the jury's inability to agree upon a verdict, which "undoubtedly was in large measure due to the sharp conflict and dispute among the witnesses concerning the facts and circumstances of the collision involved in this case and the manner of its happening". The plaintiffs asserted that the statement might contain admissions against interest and that they might be able to use it to impeach Ventittelli's trial testimony.

The defendants responded that the statement had been taken by Richard G. Nuhfer, an investigator for the City of Troy's liability insurer, "at the behest of counsel for defendants," that the statement was protected "work product" under GCR 1963, 306.2 and 310, and that the plaintiffs had failed to show good cause for requiring production of the statement.

After extended argument, but without any testimony being offered or taken as to whether there was an attorney-client relationship, the judge ordered production of the statement, saying that it was not protected work product and that, even if it were, good cause had been shown for its production.[1]

The defendants contend on appeal that the statement is protected by the attorney-client privilege and also by the work product "privilege" and that, in all events, the plaintiffs failed to show good cause for the production of the statement.

Both the "work product" rubric[2] and the language of our Court rule (GCR 1963, 306.2)[3] spelling out the work product restriction are traceable to *Hick-*

---

[1] The motion was heard on July 29, 1968, the day before the trial commenced. During the argument of the motion the defendants' lawyer asserted that the Ventittelli statement had been taken by the city's general counsel or "with his participation in the statements". Plaintiffs' lawyer responded that this assertion was not testimonially supported and was contradicted by the defendants' answers to an interrogatory put by the plaintiffs.

In response to an interrogatory as to whether any statements were taken by "investigators" and, if so, requesting identifying information including the name of the person "who obtained the statements", the city responded on May 14, 1966, that Nuhfer had taken a statement from Ventittelli on November 2, 1962, and that copies of the statement were in the office of defendants' trial counsel (a firm of attorneys that did not include the city's attorney) and that the location of the originals of the statements was not known.

The stenographer captioned the Ventittelli statement: "Statement of Alex Ventittelli—the Stenographic Report of Conversation had between Mr. Richard G. Nuhfer and Mr. Alex Ventittelli * * * on November 2, 1962". In addition to Mr. Nuhfer, Mr. Ventittelli, and the stenographer, there was also present the city's general attorney and a police officer.

The statement is 27 pages long. The questions were, in the main, asked by Nuhfer and were answered by Ventittelli. The city's attorney also asked some questions.

[2] See *Hickman* v. *Taylor* (1947), 329 US 495, 511 (67 S Ct 385, 91 L Ed 451).

[3] See *Hickman* v. *Taylor, supra,* p 509: "We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice."

*man* v. *Taylor* (1947), 329 US 495 (67 S Ct 385, 91 L Ed 451). Thus, although that decision of the United States Supreme Court is not binding on the states and Michigan is free to develop its own discovery jurisprudence,[4] *Hickman* v. *Taylor* is where we must begin if we are to understand where we are.

In *Hickman* the United States Supreme Court ruled that the attorney-client privilege does not extend to statements or information which an attorney secures from a witness while acting for his client in anticipation of litigation. The Court went on to rule that, nevertheless (p 510):

"it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."

Accordingly, although not protected by the absolute attorney-client privilege, an opposing party may obtain production of a lawyer's "work product" only upon a showing of necessity (p 511):

"Where relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty."

The Court thus narrowly defined the absolute attorney-client privilege but broadly defined the qualified work product exception to the general

---

[4] *Wilson* v. *Saginaw Circuit Judge* (1963), 370 Mich 404, 414.

principle of open and complete discovery under the new Federal Rules of Civil Procedure. The Court said (p 512) that in balancing the two policies, the need for discovery and the need of protecting the privacy of the attorney's work product, the "burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order".[5]

After *Hickman* the Federal courts divided on whether statements obtained in preparation for trial by non-lawyers were work product. Some took the position that the emphasis in *Hickman* upon the necessity of protecting the professional work of the lawyer himself indicated that statements that were taken by non-lawyers should be freely discoverable.[6] Other courts concluded that trial preparation materials assembled by non-lawyers were protected by the qualified immunity granted work product or reached the same result by finding that the requesting party had not shown "good cause" for production as required by Fed Rules Civ Proc, 34.[7]

The advisory committee note to the amended Federal discovery rules, effective July 1, 1970, points out that the existing Federal rules did not contain an explicit provision concerning trial preparation materials and that two verbally distinct doctrines had developed, each conferring a qualified immunity on these materials: the good cause requirement set forth in Rule 34 and the work product doctrine of *Hickman* v. *Taylor*. The committee

---

[5] In *Hickman* the trial court entered an order imposing contempt penalties upon both a party and his attorney for failing to produce written statements of witnesses taken by the attorney and to answer interrogatories requiring the attorney to record his recollection of interviews with witnesses. The United States Supreme Court affirmed the decision of the Court of Appeals setting aside the contempt orders.

[6] 4 Moore's Federal Practice, ¶ 26.63[8], p 26–395.

[7] 4 Moore's Federal Practice, ¶ 26.63[8], p 26–397. But see ¶ 26.64 [3], p 26–416; p 26–439.

reported that "when the decisions on 'good cause' are taken into account, the weight of authority affords protection of the preparatory work of both lawyers and nonlawyers".[8]

The drafters of the Michigan Court Rules, which are largely based on the Federal Rules, did their work after *Hickman* v. *Taylor* was decided but before the recent amendments to the Federal rules were adopted. If one places the new Federal Rule 26(b)(3), concerning work product, side-by-side with our work product Rule 306.2 the parallelism in the concepts becomes readily apparent:

Federal Rule § 26(b)(3):

"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Rule 306.2:

"The court shall not order the production or inspection of any writing prepared by the adverse party, his attorney, surety, indemnitor, or agent in

---

[8] See Advisory Committee Report reprinted in 48 FRD 487, 499, 502; 4 Moore's Federal Practice, ¶ 26.64[3], p 26–416.

anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. . . . The Court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories."

It will be observed that, both under the amended Federal rule and our rule, work product is protected whether prepared by the litigant himself, his attorney, surety, indemnitor or agent.

The "good cause" requirement of the original Federal Rule 34[9] was not incorporated into our corresponding rule 310, but in a series of decisions the Michigan Supreme Court and our Court ruled that "good cause"[10] or "cause"[11] must be shown before trial preparation materials can be required to be produced. Thus, under both the present Federal practice and our practice, trial preparation materials, whether prepared by the litigant, his attorney

---

[9] The 1970 amendments to the Federal discovery rules eliminate the good cause requirement from Rule 34. See 4 Moore's Federal Practice, ¶ 26.64[2], p 26–414. However, the new Federal work product rule, 26(b)(3) carries forward this concept in congeneric language: "substantial need." See text of new rule quoted *supra* and Moore's *op cit*, p 26–411.

[10] *J. A. Utley Company* v. *Saginaw Circuit Judge* (1964), 372 Mich 367, 375; *Pearson* v. *Vander Wier* (1966), 3 Mich App 41; *Jones* v. *New York C. R. Co.* (1967), 8 Mich App 575, 585; *Johnston* v. *Narmore* (1965), 1 Mich App 160.

[11] *Covington Mutual Insurance Company* v. *Copeland* (1969), 382 Mich 109, 111. See 2 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), authors' comments, pp 182, 183:

"Federal Rule 34, upon which Rule 310 was based, conditions an order for production of documents, etc., upon a showing of 'good cause.' This language does not appear in the Michigan version of the rule, but the change does not amount to anything substantial. As observed in the [official] Committee Comment: " 'The inherent discretion of the court in granting orders is a sufficient safeguard to motions made in bad faith or without the grounds of reasonable necessity.' "

or representative, are subject to production only upon a showing of

(1) "substantial need" (Federal Rule 26(b)(3)) or "good cause" or "cause" (Michigan Rule 310 as construed by our courts) *and*

(2) inability to obtain the equivalent materials without "undue hardship" (both Federal Rule 26(b) (3) and Michigan Rule 306.2) or (under Michigan Rule 306.2) that nonproduction will "unfairly prejudice" the party seeking production or cause him "injustice".

It is apparent that these various verbal formulations all rest on the same fundamental premises:

(1) trial preparation materials are not absolutely privileged even if assembled by the litigant's attorney unless they concern confidential communications between attorney and client;[12]

(2) such materials, even if not assembled by the attorney but by the litigant himself or by some other person, are protected by a qualified immunity which obliges an opponent desiring discovery to show that he cannot, by reasonable exertion of his own efforts, obtain equivalent materials and that he, therefore, has, as it is variously expressed, "substantial need" or "cause" for their production, so that undue hardship (unfair prejudice or injustice) is avoided.[13]

The statement in *J. A. Utley Company* v. *Saginaw Circuit Judge* (1964), 372 Mich 367, distinguishing between (i) materials prepared by the attorney and those engaged by him and (ii) preparatory work by others, is not consistent with Rule 306.2, which ex-

---

[12] See *Lindsay* v. *Lipson* (1962), 367 Mich 1, 5, holding that a communication concerning a patient's condition by a physician who examined her to her attorney is a communication by the patient-client to her attorney through the agency of the physician and is protected by the attorney-client privilege.

[13] See 4 Moore's Federal Practice, ¶ 26.64[3], p 26–416 concerning the nature of the showing required.

plicitly precludes such a distinction.[14]     The dis-
covery orders affirmed in *Utley* were entered under
the former practice.    While the *Utley* Court ad-
verted to the new general court rules of 1963, no
mention was made of pertinent Rule 306.2.[15]     We
take it, therefore, from the form of Rule 306.2 that
the *Utley* distinction between materials prepared by
attorneys and by other persons has been superseded
by Rule 306.2 and is no longer to be drawn.

On July 13, 1965, after the decision in *Utley,* the
Michigan Supreme Court amended Rule 306.2 to

---

[14] In *Utley* the Court upheld a trial court order directing de-
fendants, their agents or insurance carriers to produce statements
they had taken.    The Court declared (pp 372, 373):

"No privilege arises when an attorney, engaged by an insurer
to prepare for litigation, simply 'directs' or 'supervises' the taking
of statements and the doing of other preparatory work *by employees
of the insurer.*    Such employees are selected, hired, and paid by
the insurer, not by the attorney, and they owe primary allegiance
to their employers.    They are agents of the insurer rather than
the attorney; their status for instant purposes being the same as
that of Grand Trunk's agent when the latter took the statement
discovered in *LaCroix.* [*LaCroix* v. *Grand Trunk W. R. Co.* (1962),
368 Mich 321.]    On the other hand, when an attorney thus en-
gaged—by an insurer prior to suit—actually hires and arranges
to pay his own selected agent, say an independent adjusting firm
or firm of engineers, or a private investigator, or (as in *Lindsay*
v. *Lipson* [1962], 367 Mich 1) a physician, to investigate and take
statements, or to obtain and report to such hiring attorney de-
sired preparative information, the documentary statements and
reports thus forthcoming become a part of the hiring attorney's
work product, just as if the work had been done by the attor-
ney in person or by an employee of his office." (Emphasis by
the Court.)

We note that the Ventittelli statement appears to have been
taken by an employee of an insurer (see fn. 1).

Other pertinent discovery decisions of the Michigan Supreme
Court include *Kalamazoo Yellow Cab Company* v. *Kalamazoo Circuit
Judge* (1961), 363 Mich 384 (an accident report by an employee
to the defendant employer required to be produced); *LaCroix* v.
*Grand Trunk W. R. Co.* (1962), 368 Mich 321, and *Otto Taylor
Construction Company* v. *Saginaw Circuit Judge* (1964), 372 Mich
376 (the defendant was required to furnish the plaintiff with a
copy of a statement obtained from the plaintiff by the defend-
ant's insurer); *Wilson* v. *Saginaw Circuit Judge* (1963), 370 Mich
404 (statements and reports of witnesses and parties to liability
insurers of the defendants were required to be produced.

[15] See *Chapman* v. *Buder* (1968), 14 Mich App 13, 20, fn 4 and ac-
companying text.

take the form quoted above. A sentence was deleted which specifically gave to "statements" obtained from an adverse party or other witness the qualified protection granted work product.[16]

The authors of Michigan Court Rules Annotated make the following comment on the amendment:

"Since this restriction upon the discovery of 'statements' has now been eliminated, it is even more important to distinguish between 'statements' and 'writings'. The former may now be freely discovered, unless they fall within the strict definition of the attorney-client privilege. But the latter may not be discovered, except on a showing of hardship.

"As indicated above, an important reason for permitting discovery of statements is their usefulness at trial for impeachment or refreshing recollection. Any document which might be so used can be classified as a 'statement'."[17]

It would appear from the foregoing that no statement, whether of a party himself or of another witness,[18] and whether taken by his attorney or

---

[16] The sentence formerly in the rule, now deleted, was placed between the two sentences above quoted and read:

"The court shall not order the production or inspection of any statement obtained from an adverse party or other witness by a party, his attorney, surety, indemnitor or agent in anticipation of litigation unless a copy of such statement was not given to the witness or party or unless the court is satisfied that the denial of production and inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice." See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 306.2, p 109, for the entire rule as it formerly read.

[17] 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1969 Supp, p 25.

[18] Focusing on the specific question that confronts us, *i.e.*, whether a "statement" or "writing" of the opposing party can be required to be produced, Messrs. Honigman and Hawkins write:

"If the party's report is not protected by the attorney-client privilege, there remains to be considered the 'work product' restriction of sub-rule 306.2. That restriction does not apply if the report is in reality a 'statement'—that is—a record of the party's recollection of the event, prepared or acknowledged by him, such that it would have potential evidentiary significance for purposes of

someone else, is protected by the work product restriction and that such statements are freely discoverable upon a showing of cause or need,[19] unless they are protected by the absolute attorney-client privilege applicable only to confidential communications between an attorney and his client.

Another dimension to our inquiry was, however, added when the Michigan Supreme Court announced its decision in *Covington Mutual Insurance Company* v. *Copeland* (1969), 382 Mich 109. There the Court considered amended work product Rule 306.2 in the context of a demand by a party for production of a statement she had given the other party. The trial court required that the statement be produced. The Supreme Court reversed because the demanding party had not shown cause. The Supreme Court referred to GCR 1963, 306.2 as "pertinent"; it also referred to Rule 310 and concluded (pp 111, 112):

"The discretion in *both* rules can be moved only by 'cause shown.' * * * 'Cause shown' must at least meet the minimum requirements of *both* rules." (Emphasis supplied.)

The language of the Court in *Covington* clearly implies that, despite the July 1965 amendment,

---

refreshing his recollection, for impeachment, or as an admission of the party-opponent. If the document is not a record of the party's recollection of the event, but rather a report of his findings upon investigating, interviewing witnesses, or conducting experiments, etc., in anticipation of litigation or preparation for trial, it will be protected as a 'writing' under the 'work product' restriction of sub-rule 306.2. Then its production could be compelled only upon a showing of undue hardship. But the party's knowledge of relevant facts would not be protected against disclosure upon taking his deposition." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1969 Supp, pp 28, 29.

[19] The authors of Michigan Court Rules Annotated wrote, after the 1965 amendments: "It is always incumbent upon the moving party to show good cause for the order he seeks, which must imply a requirement of showing some need for the production of the document. See *J. A. Utley Company* v. *Saginaw Circuit Judge* (1964), 372 Mich 367, 126 NW2d 696." 2 Honigman & Hawkins, Michigan Court Rules Annotated 2d ed, 1969, Supp, p 31.

"statements" are probably still covered as "writings" by our work product Rule 306.2.

It may be of no importance whether statements are writings because under Rule 310, as it has been interpreted by our courts, good cause or cause must in all events be shown before any document, including a statement, can be required to be produced, and in the administration of the work product restriction and the good cause rule the courts have, commentators seem to agree, applied parallel concepts and reached parallel results.[20]

Ours is an adversary system; it is contemplated that each litigant will separately prepare his case without access to the files of his opponent. Accordingly, the writings and materials assembled by a party ordinarily should not be subject to scrutiny by his adversary. But, in contrast with the attorney-client privilege, the work product restriction is not absolute. The interest in protecting the adversary nature of proceedings and the privacy of the work product assembled in preparation for trial does not require sublimation from the ultimate objective, ascertainment of the truth. When a litigant is unable to assemble materials which his opponent has in his possession, a court may, in the exercise of discretion, order that such materials be furnished to the requesting litigant unless they are truly covered by the absolute privilege which protects confidential communications between attorney and client.

In summary, statements, except confidential statements by a client to his attorney, are not privileged.

[20] As the advisory committee on the new Federal rules observed, the courts had been unable to distinguish clearly the two verbally-distinct requirements of justification: the good cause requirement and the showings required to validate production of work product. See *Advisory Committee Note* reprinted 48 FRD 487, 501; 4 Moore's Federal Practice, ¶ 26.63[9], p 26–408; ¶ 26.64[3], p 26–416.

They are, however, if obtained in anticipation of litigation or preparation for trial, work product and, therefore, cloaked with a qualified immunity without regard to whether they are prepared by an attorney or by some other person and whether such other person was engaged by an attorney. Statements, other than privileged attorney-client statements, like all other work product, are subject to production upon a showing of "cause". Cause is simply necessity—a basic thread in the law as in all of life. And necessity is simply the inability of the requesting party otherwise to obtain the work product statement and its apparent usefulness. Upon a finding that the statement cannot otherwise be obtained and that it would be useful, the court will, assuming there is a real distinction between the "cause" gloss on Rule 310 and the "unfair prejudice—undue hardship—injustice" requirement of Rule 306.2, generally conclude that "unfair prejudice" or "undue hardship" has been shown or that it would be "unjust" not to require that the statement be furnished.[21]

Addressing ourselves to the defendants' contention that the Ventittelli statement was a confidential communication protected by the attorney-client privilege, we note that when the defendants answered and argued the discovery motion they rested their opposition to the production of his statement entirely on their contention that it was protected work product and that adequate cause for production had not been shown. They did not at that time contend that it was protected by the attorney-client privilege.

The plaintiffs assert that as a matter of fact, there was no attorney-client relationship and that the communication (the "statement") was not in fact a confidential communication between attorney

---

[21] See 4 Moore's Federal Practice, ¶ 26.64[3], p 26–419 et seq.

and client. While it is undisputed that Ventittelli was an employee of the city and that the city attorney was present when his statement was taken, to allow the defendants to assert the attorney-client privilege for the first time on appeal would, apart from the validity as a question of law of this claim of privilege,[22] deprive the plaintiffs of the opportunity to meet the defendants' claim of privilege factually. We, therefore, decline to evaluate that claim.

Turning to the defendants' contentions based on the work product restriction, if, as Messrs. Honigman and Hawkins write, statements, unless protected by the attorney-client privilege, are never work product and, hence, are always freely discoverable, then Alex Ventittelli's statement was discoverable upon a showing of cause. If, however, as implied by *Covington,* statements are "writings" within the meaning of amended Rule 306.2, then, according to *Covington,* under both Rule 306.2 and Rule 310, the question, again, would be whether the moving party had shown cause for production of the statement.

We agree with the trial judge that adequate cause for production was shown. The statement, taken four days after the accident, six years before the trial, might prove useful in resolving the dispute if it contained admissions or for impeachment purposes. See *Pearson* v. *Vander Wier* (1966), 3 Mich App 41, where we ruled that where a statement might be useful in impeaching a witness's trial testimony or credibility, the other party is entitled to a copy.[23] Other courts have concluded that the

---

[22] See Anno: Right of Corporation to Assert Attorney-Client Privilege, 98 ALR2d 241. See 58 Am Jur, Witnesses, §§ 492–494 as to effect of presence of third persons.

[23] *Cf. J. A. Utley Company* v. *Saginaw Circuit Judge, supra,* p 375: "True, for the pending lawsuits involved here, it may well be

requisite necessity or cause for the production of a statement is established when it was taken shortly after the event which it covers and, because of the passage of time, the memory of the witness at the time he gave the statement is likely to have been more precise than at the time discovery is sought;[24] statements taken close to the event "are unique in that they constitute the immediate impression of the facts * * * there can be no duplication by a deposition that relies upon memory, and an allegation of these facts, uncontroverted, is a sufficient showing of good cause".[25]

## II.

We now consider the claim that the verdict was excessive. The rule is that, unless so excessive as to shock the judicial conscience, a jury verdict will not be set aside.[26]

---

that the fact of seeming exclusive control, by the sued defendants and their insurers, of the documented information sought by plaintiffs, fully justifies the trial judge's order as it stands."

*Kalamazoo Yellow Cab Company* v. *Kalamazoo Circuit Judge* (1961), 363 Mich 384 (accident *report* required to be produced for possible use to impeach a witness if called at the trial); *Wilson* v. *Saginaw Circuit Judge* (1963), 370 Mich 404, 409 (statement and reports might be useful for impeachment purposes); *Hickman* v. *Taylor, supra,* p 511 ("or they [statements and documents] might be useful for purposes of impeachment or corroboration"). See, generally, Anno: Discovery in civil case, of material which is or may be designed for use in impeachment, 18 ALR3d 922.

[24] "Statements taken from the witnesses shortly after the accident constitute 'unique catalysts in the search for truth'," *Johnson* v. *Ford* (D Colo, 1964), 35 FRD 347, 350, in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements." *Southern Railway Company* v. *Lanham* (CA5, 1968), 403 F2d 119, 128. Similarly see: *Crowe* v. *Chesapeake & O. R. Co.* (ED Mich, 1961), 29 FRD 148; *De Bruce* v. *Pennsylvania R. Co.* (ED Pa, 1947), 6 FRD 403; *Johnson* v. *Ford* (D Colo, 1964), 35 FRD 347.

[25] *Brown* v. *New York, N. H. & H. R. Co.* (SDNY, 1955), 17 FRD 324, 325.

[26] *Stevens* v. *Edward C. Levy Company* (1965), 376 Mich 1, 6; *Aho* v. *Conda* (1956), 347 Mich 450, 456.

Hazel Powers was 19 years of age at the time of the accident. She suffered a fracture of the left ankle and compound fractures of both bones of the right leg. Surgery was performed on the right leg and a metal screw was placed in the tibia to stabilize and strengthen the leg. In addition to the broken bones, soft tissue surrounding the fracture sites was also injured. Both legs were casted; a full length cast up to her thigh on the right leg and a cast up to the knee on her left leg. She remained in the hospital almost two weeks and upon returning home remained in bed for about another week. She then used a wheel chair, and later maneuvered around on crutches. She was able to discard the crutches at the end of five months, but even then "had a lot of trouble walking". She testified that it was like learning to walk all over again.

At the time of the second trial, nearly six years after the accident, Mrs. Powers claimed that her right leg aches constantly and swells up and that her left ankle is stiff and swells up. She found it necessary to elevate her right leg to obtain relief. There was medical testimony that these conditions were permanent and that the bone deformity was "something she's going to have the rest of her life." Mrs. Powers was not able to return to work until May 1963.

In addition to the leg and ankle fractures, Mrs. Powers suffered a miscarriage of her first child a few days after the accident.[27] There was testimony that the miscarriage was caused by the accident. She suffered considerable abdominal pain before the miscarriage.[28]

---

[27] See *Powers* v. *City of Troy* (1968), 380 Mich 160, where the Michigan Supreme Court held that the administratrix of the estate of the stillborn child could not maintain an action for wrongful death.

[28] The defendants point out and we note that the miscarriage

Because of Mrs. Powers' disability, Mr. Powers helped with the housework. Even though he did not testify, it is a permissible inference from Mrs. Powers' testimony that he was deprived of her services and consortium and that because of the permanency of her injuries he will to some degree be deprived of her services and consortium for the balance of her life.

We agree with the trial judge that the verdict does not shock the judicial conscience.

Affirmed. Costs to plaintiffs.

All concurred.

---

did not impair Mrs. Powers' ability to have children. Her first child was born in September 1963.