191 Mich. App. 90 (1991)
477 N.W.2d 412
IN RE SUBPOENA DUCES TECUM TO THE WAYNE COUNTY PROSECUTOR (EVINA v CITY OF DETROIT)
Docket No. 120360.
Michigan Court of Appeals.
Decided September 3, 1991, at 9:05 A.M.
John D. O'Hair, Prosecuting Attorney, Andrea Solak, Chief, Special Operations, and Charles E. Grant, Assistant Prosecuting Attorney, for the appellant.
James A. Carlin, for the appellees.
Before: GRIFFIN, P.J., and SAWYER and BRENNAN, JJ.
SAWYER, J.
The Wayne County Prosecutor appeals from an order of the circuit court denying the prosecutor's motion to quash a subpoena duces tecum. We affirm.
Plaintiff Laura L. Evina brought this action against the City of Detroit and several of its police officers following the death of her husband, Robert M. Evina, at the hands of the police. Appellant prosecutor is not a party to this case, but seeks to prevent plaintiff from gaining access to an investigation file compiled by his staff when he was contemplating bringing criminal charges against the various police officers for their involvement in Robert Evina's death. After reviewing the contents *92 of the prosecutor's file in camera, the trial judge issued an opinion and order denying the motion to quash plaintiff's subpoena duces tecum for the file. The prosecutor appeals that determination by leave granted.
Plaintiff and her decedent were owners of a bar in Detroit named the "Body Shop Lounge" during the time in question. During the period from October 16, 1984, through March 17, 1986, many of the police officers of the Sixth Precinct in Detroit frequented the bar. Plaintiff alleges that several of the officers, who are named as defendants in this suit, demanded free services, refused to leave the bar at closing, took narcotics, and demanded sexual favors from the dancers at the bar.
According to the complaint, six officers handcuffed and then assaulted a patron at the Body Shop Lounge on May 1, 1985. The officers threatened Robert Evina that if he reported the assault to their superior officers, they would cite the bar for violations of Liquor Control Commission regulations. Despite the threat, Evina reported the incident, and an internal investigation was conducted by the Detroit Police Department. After Evina reported the assault at his bar, defendant police officers issued numerous LCC citations against the bar and allegedly otherwise harassed Evina.
On March 10, 1986, defendant Officer David Garcia entered the Body Shop Lounge and had numerous loud conversations with Evina about the police department's attempt to shut down the bar. Plaintiff claims that at about 3:30 A.M., Garcia, Evina, and two bar employees stepped outside. Apparently, Garcia pretended to box with Evina and then began to fight with one of the employees. Plaintiff claims that when Evina attempted to *93 calm the situation, Garcia shot and killed Evina with his service pistol.
The Wayne County Prosecutor's Office conducted an investigation of Evina's death and of plaintiff's claim that members of the Sixth Precinct were attempting to close the Body Shop Lounge. Apparently, Nancy Alberts, an assistant prosecutor, conducted interviews, reviewed the homicide file of the Detroit Police Department, ordered polygraph tests to be administered, summarized the homicide file and interviews, and arrived at a conclusion on whether any officers should be prosecuted. No charges were issued against Officer Garcia or any other officers of the Sixth Precinct, and the file was closed in 1986.
Plaintiff thereafter instituted the instant action and issued a subpoena duces tecum to the keeper of the records at the Wayne County Prosecutor's Office. The subpoena ordered the keeper of the records to produce the complete records of the investigation conducted by the prosecutor regarding David Garcia and the incident in which Evina was killed. The prosecutor moved to quash the subpoena or, in the alternative, to modify the subpoena by way of a protective order, claiming, among other things, that the file was protected by the work-product privilege. The trial court denied the motion, concluding that the work-product doctrine did not apply to nonparties. The court did, however, issue a protective order.
Appellant prosecutor first argues that the subpoena should have been quashed because it seeks to discover materials protected under the work-product doctrine. We disagree. The work-product doctrine in Michigan is contained in MCR 2.302(B) (3)(a) and provides as follows:
Subject to the provisions of subrule (B)(4), a *94 party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. [Emphasis added.]
By its terms, the above court rule prohibits the discovery of materials compiled by a party or a party's representative in anticipation of litigation absent a showing of substantial need for the materials and inability to obtain the materials through other means. The court rule does not apply the same restrictions to the work product of an attorney for a nonparty.
The prosecutor asks this Court to extend the work-product privilege beyond the strict scope of the words found in MCR 2.302(B)(3) by pointing to the equivalent federal rule, FR Civ P 26(b)(3), arguing that several federal cases interpreting the federal rule support the proposition that the work-product doctrine extends to nonparties. The prosecutor is correct that the Michigan rule is virtually identical to the federal rule and, therefore, that it is appropriate to look to federal cases interpreting the federal rule for guidance. See Powers v City of Troy, 28 Mich App 24; 184 NW2d 340 (1970). The flaw in the prosecutor's argument, however, is that the federal cases relied on by the prosecutor do not *95 stand for the proposition that the work-product doctrine under federal law has been extended to the attorneys of nonparties.
In re Murphy, 560 F2d 326 (CA 8, 1977), while concluding that the work-product doctrine does extend to documents prepared in anticipation of now-terminated litigation, nevertheless involved the government seeking the files of law firms representing two pharmaceutical companies in a case between the government and the pharmaceutical companies. Similarly, in In re Grand Jury Subpoena Dated November 8, 1979, 622 F2d 933 (CA 6, 1980), the court concluded that the work-product privilege applied to protect an attorney who represented a corporation from testifying before a grand jury in a case between the government and that corporation. In another case relied on by the prosecutor, United States v Leggett & Platt, Inc, 542 F2d 655 (CA 6, 1976), the court held that the work-product privilege was properly invoked by the government in an antitrust case brought by the government against a corporation when the corporation sought to discover materials prepared by the government in other closed antitrust cases. The common theme in all of these cases is that the work product sought to be discovered was that of attorneys representing a party to the action. None of these cases stand for the proposition that the work product of an attorney who represents a nonparty is protected from discovery.
Contrary to the prosecutor's position, there have been a number of federal decisions interpreting the federal rule that have explicitly held that the work-product privilege does not extend to nonparties. The Ninth Circuit, in In re Subpoena Served on California Public Utilities Comm, 892 F2d 778, 781 (CA 9, 1989), held that materials prepared by *96 attorneys for the California Public Utilities Commission were not protected under the work-product doctrine from discovery in a case between two private corporations:
On appeal, Westinghouse argues that [FR Civ P] 26(b)(3) does not protect materials prepared by CPUC attorneys from discovery in the present litigation, because the CPUC is not a party to the litigation between Edison and Westinghouse. We agree. Although some courts have extended the work product privilege outside the literal bounds of the rule, we conclude that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. See Gomez v City of Nashua, 126 FRD 432, 434 (D NH, 1989); FTC v Grolier, 462 US 19, 25; 103 S Ct 2209, 2213; 76 L Ed 2d 387 (1983) (dictum); Chaney v Slack, 99 FRD 531, 533 (SD Ga, 1983); Galambus v Consolidated Freightways Corp, 64 FRD 468, 473 (ND Ind, 1974). See also [Wright & Miller, Federal Practice and Procedure, § 2024, p 201-02] ("[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."). Because the CPUC is not a party to Edison's suit against Westinghouse, it cannot invoke Rule 26(b)(3) against Westinghouse's subpoena of the CPUC documents.
The CPUC argues that even though it is not a party to the Edison-Westinghouse litigation, the policy behind Rule 26(b)(3) requires that the materials in question be protected from discovery. It argues that disclosure here would defeat the key purpose of the rule, which is to safeguard the attorney-client relationship by enabling attorneys to record their thoughts and advice candidly and completely. But even if the CPUC correctly characterizes the policy of the rule, the language of the rule makes clear that only parties and their representatives may invoke its protection. We are not *97 free to suspend the requirement. To the extent that disclosure causes hardship to the CPUC, it is free to seek a protective order under Rule 26(c). But Rule 26(b)(3) is inapplicable.
Similarly, a federal district court judge in Gomez v City of Nashua, 126 FRD 432, 434, n 1 (D NH, 1989), held that an assistant attorney general could not invoke the work-product privilege in an action under 42 USC 1983 in a case between a citizen who alleged that he was assaulted by the Nashua police and the City of Nashua. The same conclusion was reached by the court in Chaney v Slack, 99 FRD 531 (SD Ga, 1983), wherein the court held that the work-product doctrine did not apply to records kept by the board of education because the board was not a party to a suit brought by a student against a teacher employed by the board of education. Finally, the Supreme Court, in dicta, noted a similar requirement that the material be prepared by or for a party to the subsequent litigation in Federal Trade Comm v Grolier, Inc, 462 US 19, 25; 103 S Ct 2209; 76 L Ed 2d 387 (1983).
The prosecutor further argues that the policy reasons behind the work-product rule equally apply to the work product of attorneys of nonparties, citing Hickman v Taylor, 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947). Hickman is the landmark case in this area, which has given rise to both the federal and state rules. However, Hickman itself involved the attorneys of a party to the litigation and, therefore, does not directly stand for the proposition that the work-product doctrine applies to nonparties. The prosecutor's argument that the policy reasons expressed in Hickman equally apply to the circumstances of the case at bar was addressed in In re California Public Utilities Comm, *98 supra. As the Ninth Circuit noted in that case, even if the policy argument is correct, the language of the rule nevertheless makes it clear that the doctrine applies only to parties and their representatives and the court is not free to suspend that requirement. This is equally true whether we discuss the federal rule or the Michigan rule. No matter how compelling the prosecutor's policy argument might be, the fact remains that MCR 2.302(B)(3)(a), by its own terms, deals only with the work product of parties or their representatives.
In short, because the Supreme Court limited the application of MCR 2.302(B)(3)(a) to parties and representatives of parties, it is for the Supreme Court to determine whether the policy considerations behind the work-product rule warrant extension of the doctrine to nonparties and their representatives. However, until such time as the Supreme Court is persuaded that an extension is warranted and amends the court rule accordingly, we must apply the court rule as written. The nonambiguous language of the court rule clearly applies the work-product doctrine only to parties and their representatives.[1]
Turning to the arguments raised in the dissent, a discussion of those points are in order. Our dissenting colleague correctly notes that privilege is governed by the common law, except as modified by statute or court rule. MRE 501. Our colleague, however, then reaches the incorrect conclusion that because MCR 2.302(B)(3)(a) "neither addresses nor modifies the common-law work-product privilege enjoyed by nonparties, it has no effect on the privilege." Post at 104. Our dissenting colleague would be correct if the common law recognized a *99 work-product privilege for nonparties, but, as discussed above, it does not.[2]
The authorities relied upon by our dissenting colleague do not support his conclusion. Hickman, supra, involved parties to the litigation, not nonparties. Furthermore, while the policy considerations behind the Hickman decision, as discussed by both the Supreme Court and the Third Circuit, may also be applicable to nonparties, that does not establish that the work-product privilege has been extended to nonparties. Our dissenting colleague certainly points to nothing in the Supreme Court's opinion in Hickman that suggests this. In fact, as noted above, the Supreme Court, in dicta, has indicated that the work-product privilege does not extend to nonparties. Grolier, supra.
The Michigan cases relied on by our dissenting colleague are similarly unpersuasive. Both J A Utley Co v Saginaw Circuit Judge, 372 Mich 367; 126 NW2d 696 (1964), and Powers, supra, involve the work product of parties' attorneys, not nonparties. Similarly, our dissenting colleague's reliance on the federal cases, United States v Davis, 636 F2d 1028 (CA 5, 1981), and Arney v George A Hormel & Co, 53 FRD 179 (D Minn, 1971), is misplaced. Davis involved Internal Revenue Service civil investigative summonses directed at attorneys representing the target of an IRS investigation. Davis did not apply the work-product privilege to nonparties. Rather, it addressed the question of how imminent must the prospect of litigation have been for material to be work product prepared in anticipation of litigation. Davis, supra at 1040. This was also one of the issues addressed *100 in Arney, supra, which again considered the work-product privilege with respect to a party to the litigation, not a nonparty.
Our dissenting colleague also looks to 8 Wright & Miller, Federal Practice & Procedure, Civil, § 2024, pp 197-198, 209, in support of the proposition that the work-product privilege extends to nonparties. Post at 110-111. However, the passages from Wright & Miller relied on in the dissent do not support our dissenting colleague's thesis. The dissent's first quotation from Wright & Miller, pp 197-198, post at 110, does not even deal with nonparties. Rather, it concerns the restriction that the work-product privilege applies only to materials prepared in anticipation of litigation and whether documents obtained before the commencement of litigation, on behalf of a party to the litigation, are protected under the privilege. This is the same question addressed in Davis, supra, and Arney, supra. It has nothing to do with the work-product privilege as it relates to nonparties. Regarding the dissent's second quotation from Wright & Miller, p 209, that passage merely recognizes that a nonparty may have some privilege that is applicable, but does not expressly or implicitly maintain, or even "appear to recognize," post at 110, that the work-product privilege extends to nonparties.
Our dissenting colleague states, "I disagree with the majority's conclusion that MCR 2.302(B)(3)(a) abolishes [the work-product] privilege nonparties for materials prepared in anticipation of litigation." Post at 110; see also post at 103, 104. We, however, reach no such conclusion. Our conclusion is not, as our dissenting colleague suggests, that MCR 2.302(B)(3)(a) abolishes the work-product privilege as applied to nonparties; rather, it is that the work-product privilege does not apply, and *101 never has applied, to nonparties. Neither our dissenting colleague nor the prosecutor has managed to produce even a single case that holds that the work-product privilege extends to nonparties. As discussed above, there are a number of cases that hold that the privilege does not apply to nonparties. We cannot abolish a common-law rule that has never existed. We merely point out that there is no common-law rule extending the work-product privilege to nonparties.
Our dissenting colleague argues that the policy reasons behind applying the work-product privilege to parties also applies to nonparties. He specifically discusses the possibility of commencing a lawsuit against a nontarget defendant in order to discover the work product of the real, as yet unsued, target. See post at 108, 109-110. However, extending the work-product privilege to nonparties is not necessarily the appropriate remedy. In such a case, the party who engaged in those tactics could be prohibited from using the material in the subsequent litigation against the real target. If the nonparty is concerned about any disclosure, a protective order might be appropriate upon a showing that the nonparty is the real target of litigation and the party seeking discovery is abusing the discovery process to avoid the problems of the work-product rule in such subsequent litigation. However, there is no showing or argument that that is the case here. Accordingly, we need not address the issue in this case. Rather, we leave it for the appropriate case in the future, or for the Supreme Court in its rule-making role to consider whether an amendment to the court rules or rules of evidence is in order.[3]
*102 Finally, the dissent indicates that the case should be remanded for consideration under the Freedom of Information Act. Post at 112. However, this issue was not raised by the parties. While the FOIA may well be applicable in this case, it would be inappropriate to direct the trial court to decide the matter on an issue not raised by the parties.
For the above reasons, we conclude that the work-product doctrine does not apply to nonparties and their representatives. Accordingly, the trial court correctly denied the prosecutor's motion to quash the subpoena. The prosecutor is obligated to honor the subpoena, with the parties being, of course, bound by the trial court's protective order.
Affirmed. Appellees may tax costs.
BRENNAN, J., concurred.
GRIFFIN, P.J. (dissenting).
I respectfully dissent.
The investigation file at issue is a governmental file concerning a closed criminal investigation. As such, it is likely that the file is subject to disclosure pursuant to the Freedom of Information Act, MCL 15.231 et seq.; MSA 4.1801(1) et seq.[1] See Evening News Ass'n v City of Troy, 417 Mich 481; 339 NW2d 421 (1983), Haskins v Oronoko Twp Supervisor, 172 Mich App 73; 431 NW2d 210 (1983), and Post-Newsweek Stations, Michigan, Inc v Detroit, 179 Mich App 331; 445 NW2d 529 *103 (1989). This alternative basis for affirmance, however, was neither resolved below nor adequately addressed by the parties on appeal. Accordingly, I would remand.
This case appears postured on grounds that are broader than necessary for its resolution. Rather than deciding the case on narrow grounds, the majority strikes a blow to abolish the common-law work-product privilege of nonparties. The implications from today's decision are far-reaching and troubling.
I
The general scope of discovery is set forth in MCR 2.302(B)(1):

In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... [Emphasis added.]
Our rules further provide that the common law determines the existence and scope of a privilege unless the privilege is modified or superseded by statute or court rule:
Privilege is governed by the common law, except as modified by statute or court rule. [MRE 501.]
The majority focuses on a discovery subrule that by its terms governs only the conduct of parties to litigation. MCR 2.302(B)(3)(a) provides:
Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's *104 representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
As noted by the majority, this subrule is silent with regard to the scope and duration of the work-product privilege applicable to nonparties. Because the subrule neither addresses nor modifies the common-law work-product privilege enjoyed by nonparties, it has no effect on the privilege.
II
Any analysis of the common-law work-product privilege must begin with the landmark United States Supreme Court decision in Hickman v Taylor, 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947). In Hickman, the Supreme Court affirmed a decision by the Third Circuit Court of Appeals, which recognized and established a common-law work-product privilege. In analyzing the then existing Federal Rules of Civil Procedure, the Third Circuit noted that certain rules applied to parties while others applied to nonparties. Further, some rules made explicit reference to privileges while others did not. Nevertheless, the Third Circuit concluded that privileges must be applicable to all the rules because "we cannot believe that such omission was intended":
To have interrogatories addressed to one not a *105 party to the litigation, therefore, the procedure must be under Rule 26, not Rule 33.
As already stated, Rule 26 has a privilege limitation upon the scope of examination. Rule 33 says nothing about privilege. We think that Rule 33 is subject to the same privilege limitation as Rules 26 and 34. One reason for so concluding is that Rule 26 covers interrogatories as well as oral testimony, and the privilege rule stated in 26 carries over to 33. Another reason is that we cannot believe that such omission was intended. We can see no logic in leaving it out of 33 and putting it in 26 and 34. And we cannot think a rule as old as that of privilege is to be lightly thrown overboard. [Hickman v Taylor, 153 F2d 212, 221 (1945). Emphasis added.]
The Third Circuit Court of Appeals, in establishing a common-law privilege for an attorney's work product, cited public policy arguments that apply to both parties and nonparties "who have lawsuits and prospective lawsuits":
We are clear in our own minds, however, that "privilege" as used in the rules comprehends the material asked for in the interrogatory which is the foundation of this proceeding, namely memoranda of talks with witnesses, signed statements made by witnesses, the lawyer's recollection of talks with witnesses.... But here we are dealing with intangible things, the results of the lawyer's use of his tongue, his pen, and his head, for his client. This was talked about as the "work product of the lawyer" in the argument of the case. This is a phrase which seems pretty well to describe what we are after, though we hesitate to adopt it as a label for our concept for fear that it may contain implications not now apparent to us. It does with fair accuracy describe what we are excluding here under the term privilege. It seems likewise to be about what is represented by the English law though the difference in phraseology of the rules makes reference only moderately helpful.

*106 The reason for this frank extension of privilege beyond testimonial exclusion rests on the same foundation that the rule of evidence does.... It is rather, a rule of public policy, and the policy is to aid people who have lawsuits and prospective lawsuits. Those members of the public who have matters to be settled through lawyers and through litigation should be free to make full disclosure to their advisers and to have those advisers and other persons concerned in the litigation free to put their whole-souled efforts into the business while it is carried on.... We believe it is sound policy; we know that it is irrefutably established in the law. That the principle finds application in the facts presented to us on this appeal we are all thoroughly convinced. [Id. at 222-223.]
Following the Third Circuit Court of Appeals decision in Hickman, supra, the Advisory Committee on the Federal Rules of Civil Procedure on June 14, 1946, recommended the following amendment to Federal Rule 30(b):
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, and indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 35, the conclusions of an expert. [McCormick, Evidence (3d ed), § 96, p 234.]
Hickman was argued in the United States Supreme Court on November 13, 1946. In 1947, when the Supreme Court affirmed the work-product privilege, *107 the proposed federal rule had not yet been adopted. The United States Supreme Court, however, established a common-law work-product privilege that rests on many of the public policy arguments relied on by the Third Circuit Court of Appeals:
Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.
* * *
Proper preparation of a client's case demands that he [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways  aptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interest of the clients and the cause of justice would be poorly served.... But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade the privacy to establish adequate reasons to justify production *108 through a subpoena or court order. [Hickman v Taylor, 329 US 495, 510-512 (1947).]
The public policy argument cited by both the United States Supreme Court and the Third Circuit Court of Appeals, applies to both parties and nonparties. Whether an attorney's client has yet to be sued makes very little difference when an attorney's work product has been subpoenaed. The public policy underlying the common-law work-product privilege applies to the work product of both parties and nonparties prepared in anticipation of litigation.
III
In Michigan, the work-product privilege is and has been governed by a mesh of common-law privilege and court rule modification.
The Michigan Supreme Court in J A Utley Co v Saginaw Circuit Judge, 372 Mich 367, 373; 126 NW2d 696 (1964), in discussing Michigan's common-law work-product privilege, stated:
To determine in each like case whether a document sought to be discovered is privileged, we must bear in constant mind that the professional relationship does not arise when the attorney is an ordinary agent or employee of his principal; also that the privileged relationship has to be the special and personal one the common law has always protected. For definitions, see People v Pratt, 133 Mich 125 (67 LRA 923) [94 NW 752 (1903)], followed in Lindsay [v Lipson, 367 Mich 1; 116 NW2d 60 (1962)].
To enjoy the privilege in the context of this case the document must be the attorney's own work product; not the product of work done by agents and employees owing primary allegiance to their employers rather than to the attorney. Such at *109 least was the essence of our decision in the Lindsay Case, where the content of the doctor's report to the plaintiff's attorney was held privileged as against the defendants' demand for revelation thereof.
Later, Judge (now Justice) LEVIN, writing for our Court, noted that both our common-law work-product privilege and our court rule can trace their origins to Hickman:
Both the "work product" rubric and the language of our Court rule (GCR 1963, 306.2) spelling out the work product restriction are traceable to Hickman v Taylor (1947), 329 US 495 (67 S Ct 385, 91 L Ed 451). Thus, although that decision of the United States Supreme Court is not binding on the states and Michigan is free to develop its own discovery jurisprudence, Hickman v Taylor is where we must begin if we are to understand where we are.
* * *
The "good cause" requirement of the original Federal Rule 34 was not incorporated into our corresponding rule 310, but in a series of decisions the Michigan Supreme Court and our Court ruled that "good cause" or "cause" must be shown before trial preparation materials can be required to be produced. [Powers v City of Troy, 28 Mich App 24, 28-29, 32 (1970).]
From such decisions as Utley and Powers, it is clear that Michigan recognizes a work-product privilege not only through its court rules but also through its common law.
In the present instance, I agree with the majority that MCR 2.302(B)(3)(a) by its terms codifies a work-product privilege that is applicable to the parties to the litigation. Nevertheless, because the work-product privilege also arises from our common *110 law, I disagree with the majority's conclusion that MCR 2.302(B)(3)(a) abolishes such a privilege for nonparties for materials prepared in anticipation of litigation. Were such the case, a party could easily commence a lawsuit against a nontarget defendant and promptly proceed to subpoena all the work product of a targeted adversary who has yet to be added to the lawsuit. The public policy considerations and protections enunciated in Hickman would clearly be violated by such strategic discovery.
IV
The majority is correct in noting that MCR 2.302(B)(3)(a) and its federal counterpart, FR Civ P 26(b)(3), are nearly identical.
The prevailing construction of FR Civ P 26(b)(3) is well articulated in the following often cited passage of 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024, pp 197-198:
Rule 26(b)(3) is entirely in accord with the prior case law in denying work product immunity to documents that were not "prepared in anticipation of litigation or for trial." Some cases have attributed significance to whether a document was obtained before or after litigation was commenced, but this cannot be sound. Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.
Wright and Miller appear to recognize that the common law affords a work-product privilege to *111 nonparties that is not expressly provided by Rule 26(b)(3):
The work product rule [Rule 26(b)(3)] has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action. A person in this situation may have a claim of privilege or grounds for a protective order but he cannot rely on Rule 26(b)(3). [Wright & Miller, supra at 209. Emphasis added.]
The Fifth Circuit Court of Appeals in United States v Davis, 636 F2d 1028, 1040 (CA 5, 1981), cert den 454 US 862 (1981), summarized federal precedent as follows:
It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. See Kent Corp v NLRB, 530 F2d 612, 623 (CA 5, 1976), cert den 429 US 920; 97 S Ct 316; 50 L Ed 2d 287 (1976); In re Grand Jury Investigation (United States), 599 F2d 1224, 1229 (CA 3, 1979). We conclude that litigation need not necessarily be imminent, as some courts have suggested, see, e.g., Home Ins Co v Ballenger Corp, 74 FRD 93, 101 (ND Ga, 1977); In re Grand Jury Investigation (Joseph B Sturgis), 412 F Supp 943, 948 (ED Pa, 1976), as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. See Osterneck v E T Barwick Industries, Inc, 92 FRD 81, 87 (ND Ga, 1979), citing 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2024, at 198 (1970).
As the federal district court stated in Arney v Hormel & Co, 53 FRD 179, 181 (D Minn, 1971):
Generally the test whether the work product *112 immunity applies is not whether the litigation has begun but whether the documents may be said to have been prepared or obtained in anticipation of litigation. Hickman v Taylor, 329 US 495; 67 S Ct 385; 91 L Ed 451 (1946); Stix Products, Inc v United Merchants & Manufacturers, Inc, 47 FRD 334 (SD NY, 1969); Ownby v United States, 293 F Supp 989 (WD Okla, 1968); Kelleher v United States, 88 F Supp 139 (SD NY, 1950).
V
Our common law is not, nor should it be, stagnant. Today's decision is tomorrow's common law.
As illustrated by Hickman, our evolving common law is moved and molded by compelling public policy arguments. If the policy considerations underlying Hickman are applicable to both parties and nonparties, as I believe they are, the work-product privilege should also be applicable to nonparties for materials prepared in anticipation of litigation.
VI
In conclusion, I would remand to the lower court for briefing, argument, and a ruling regarding whether the closed governmental file at issue is discoverable pursuant to the Freedom of Information Act. I would reverse the lower court's ruling that our court rules abolished the work-product privilege enjoyed by nonparties for materials prepared in anticipation of litigation and remand for reconsideration of the common-law privilege.
NOTES
[1] A nonparty is, of course, entitled to seek a protective order under MCR 2.302(C).
[2] Actually, it is not entirely clear that our colleague in dissent actually believes that the common law recognizes such a privilege. Although he so asserts in a number of instances, part V of the dissent appears to suggest that we should modify the common law to broaden the work-product privilege to include nonparties. Post at 112.
[3] This is particularly appropriate because we are dealing with an area the Supreme Court has chosen to address by court rule, especially in light of our dissenting colleague's observation that the work-product privilege may be inapplicable to government attorneys. Post at 102, n 1. Simply put, it would be inappropriate to discard over forty years of precedent, including that handed down by the United States Supreme Court, to adopt our dissenting colleague's broad position in a case to which he is not even certain the rule would apply.
[1] Privileges, of course, belong to the client. Dierickx v Cottage Hosp Corp, 152 Mich App 162, 167; 393 NW2d 564 (1986). Governmental attorneys are servants of the public. Accordingly, the traditional work-product privilege that is at issue in the instant case may be inapplicable.