PEOPLE v GILMORE

Docket No. 193063. Submitted January 8, 1997, at Lansing. Decided March 25, 1997, at 9:15 A.M.

Robert E. Gilmore, II, was charged in the Oakland Circuit Court with felonious assault upon a park ranger at Kensington Metropark. The defendant requested that the park ranger be charged with assault and malicious destruction of property in connection with the incident, but the prosecutor's office denied the request. The defendant sought to compel the discovery of the prosecutor's "disposition record" that set forth the reasons why the request to charge the park ranger was denied. The trial court, Francis X. O'Brien, J., granted the defendant's motion for discovery. The prosecutor sought leave to appeal to the Court of Appeals and filed a motion for a stay of proceedings in the trial court. The trial court denied the motion for a stay, required the prosecutor to provide a copy of the disposition record to the defendant, delivered a copy to the defendant, and dismissed the action on the basis of the prosecutor's failure to comply with the discovery order. The Court of Appeals, SMOLENSKI, P.J., and FITZGERALD and O'CONNELL, JJ., entered an order on March 27, 1996, granting the prosecutor's application for leave to appeal and vacating the circuit court's order dismissing the action on the basis of the failure to comply with the discovery order. The defendant cross appealed from the trial court's order denying his motion to dismiss on the basis that he was denied his right to a speedy trial.

The Court of Appeals held:

1. Attorney work product may be privileged from discovery in criminal cases. The work-product privilege applies to the work product of the prosecutor in criminal proceedings.

2. The disposition record was prepared in anticipation of litigation, and the defendant has not shown a substantial need for the document. Therefore, the disposition record is protected from discovery under the work-product privilege, MCR 2.302(B)(3)(a). The document is also protected from discovery under the work-product privilege because it reflects the mental impressions, conclusions, opinions, or legal theories of the assistant prosecutor leading to the ultimate decision not to issue a warrant. The document contains

the prosecutor's evaluative considerations and is privileged from discovery. The order granting discovery must be reversed.

3. The defendant was not denied his right to a speedy trial. The order denying the defendant's motion to dismiss on speedy trial grounds must be affirmed.

Affirmed in part and reversed in part.

1. TRIAL — DISCOVERY — WORK-PRODUCT PRIVILEGE — WORDS AND PHRASES — PREPARED IN ANTICIPATION OF LITIGATION.

Although the work-product privilege allows a party to obtain materials prepared in anticipation of litigation by affirmatively showing a substantial need for the materials and undue hardship in obtaining them by other means, the privilege does not allow a party to obtain materials that merely reflect the mental impressions, conclusions, opinions, or legal theories of an attorney; litigation need not be commenced or threatened before materials may be considered prepared in anticipation of litigation; it is sufficient if the prospect of litigation is identifiable, either because of the facts of a situation or the existence of pending claims (MCR 2.302[B][3][a]).

2. CRIMINAL LAW — WORK-PRODUCT PRIVILEGE — PROSECUTING ATTORNEYS.

The work-product privilege applies to the work product of the prosecutor in criminal proceedings (MCR 2.302[B][3][a], 6.201[C]).

3. CRIMINAL LAW — WORK-PRODUCT PRIVILEGE — PROSECUTOR'S DISPOSITION RECORD.

A prosecutor's disposition record that is prepared in all cases in which the issuance of an arrest warrant is requested and denied and sets forth the prosecutor's reasons for the denial may be found to be privileged from discovery on the ground that it is a document prepared in anticipation of litigation and the defendant has failed to show a substantial need for the document or on the ground that the document consists of the evaluative considerations of the prosecutor reflecting the mental impressions, conclusions, opinions, or legal theories of the prosecutor leading to the ultimate decision not to issue a warrant (MCR 2.302[B][3][a]).

4. CONSTITUTIONAL LAW — SPEEDY TRIAL.

Proper considerations in determining whether a defendant has been denied the right to a speedy trial are the length of the delay, the reason for the delay, the defendant's assertion of the right to a speedy trial, and prejudice to the defendant; a delay of more than eighteen months is presumed to be prejudicial, and the prosecution bears the burden of proving lack of prejudice to the defendant; although delays inherent in the court system are technically attributable to the prosecution, they are given a neutral tint and are

assigned only minimal weight in determining whether the defend-
ant was denied a speedy trial.

5. Constitutional Law — Speedy Trial — Delay — Prejudice.
    General allegations of prejudice to the defense are insufficient to
    establish that the delay in bringing a defendant to trial denied the
    defendant the right to a speedy trial; the defendant's anxiety, alone,
    is insufficient to establish a violation of the right to a speedy trial.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *J. Benjamin Dolan,* Assistant Prosecuting Attorney, for the people.

*Booth Patterson, P.C.* (by *Allan T. Motzny*), for the defendant.

Before: Markman, P.J., and O'Connell and D. J. Kelly*, JJ.

Markman, P.J. Defendant was charged with felonious assault upon Kensington Park Ranger Jeffrey Shade, MCL 750.82; MSA 28.277. Defendant requested that Ranger Shade be charged with assault and malicious destruction of property in connection with the incident, but the prosecutor's office denied this request. Defendant subsequently filed a motion, over the prosecutor's objections, to compel the discovery of the prosecutor's "disposition record," which set forth the reasons why the prosecutor denied defendant's request. The trial court granted defendant's motion. The prosecutor appeals from that order by leave granted, and defendant cross appeals from the trial court's order denying his motion to dismiss the charge against him on the basis that he was denied

---

* Circuit judge, sitting on the Court of Appeals by assignment.

his right to a speedy trial. We reverse the trial court's order granting discovery of the prosecutor's disposition record but affirm its order denying defendant's motion to dismiss on speedy trial grounds.

On July 4, 1994, after a fireworks display at Kensington Metropark, defendant was driving his Range Rover out of the boat rental area, where two park rangers, Michael Grant and Jeffrey Shade, were directing traffic. According to the rangers, defendant disobeyed their instructions to travel west and drove over flares to travel east. Ranger Shade then moved in front of the vehicle and told defendant to stop. Because defendant did not stop, Shade hit the hood of defendant's vehicle with a flashlight and told him to park the vehicle on the shoulder of the road. However, defendant continued to travel forward. Shade was standing against the front of the Range Rover and alleges that he was lifted nearly off his feet and fell onto the hood. He claims that he then swung forward with his flashlight, which struck the windshield and shattered it. Kensington Park officials issued a citation to defendant and later sought an arrest warrant.

The following day, Brian Tingley gave a statement to Kensington Park officials providing an alternative description of the incident, which he witnessed while sitting as a passenger in his father's car. Tingley saw the Range Rover attempt to travel east by turning right. A ranger ran across the street and hit the Range Rover in the headlight with a flashlight two or three times while yelling "you can't go this way." Tingley

stated that the ranger broke the headlight.[1] It then appeared to Tingley that the Range Rover was pulling off the road. However, as defendant tried to pull over, "the ranger jumped in front of his . . . car and kind of leaned up onto the front of the . . . hood and took his flashlight and hit it, and yelled, 'you're running me over' into his . . . walkie-talkie." Tingley did not know defendant but reported the incident because he was bothered that the ranger claimed defendant was running him over when it did not so appear. Moreover, Tingley believed that "it was obvious [the ranger] meant to hit the . . . Range Rover with his flashlight. There was no accident. . . . [H]e wasn't falling or anything. He . . . was leaning on the car and hit it with his flashlight."

After being bound over to the circuit court for a trial regarding the felonious assault charge, defendant requested dismissal of the charge in light of the preliminary examination testimony of independent witness Brian Tingley and because the testimony of Ranger Shade was not credible and defied common sense. The prosecutor denied defendant's request, stating that there was probable cause to bind him over for trial on the felonious assault charge. Defendant subsequently requested that criminal charges be filed against Shade for assault and malicious destruction of property, but the prosecutor declined to do so.

Defendant subsequently filed a motion to obtain "copies of any statements or other documents indicating the reason for denial of defendant's warrant request for the prosecution of [Ranger Shade]," spe-

---

[1] However, Ranger Laverne David Long testified that defendant's headlight was not broken that evening.

cifically, the prosecutor's disposition record. The prosecutor opposed defendant's motion on the basis that his disposition record constituted attorney work product and fell within the deliberative-process privilege.[2] The trial court conducted a hearing and an in camera inspection of the prosecutor's disposition record and determined that it was not work product. It therefore ordered the prosecution to provide the document to defendant. The prosecutor refused to comply with the discovery order, filed an emergency application for leave to appeal to this Court, and filed a motion for a stay of proceedings in the trial court. The trial court denied the prosecutor's motion for a stay and required the prosecutor to provide defendant with a copy of the disposition record.[3] The trial court consequently delivered a copy of the disposition record to defendant.[4] In granting leave to appeal and vacating the circuit court's order of dismissal in favor of the defendant, this Court also granted the prosecutor's motion to suppress the disputed document.[5]

---

[2] The prosecutor's disposition record is prepared in all cases in which the issuance of an arrest warrant is requested and denied. The disposition record sets forth the assistant prosecutor's reasons for the denial. Here, the prosecutor prepared the disposition record in response to a warrant request by defendant.

[3] The trial court also granted defendant's motion for dismissal on the basis of the prosecution's failure to comply with the discovery order. However, this Court vacated the dismissal order in our order granting the prosecutor leave to appeal.

[4] This Court notes its disapproval of the trial court's action in this regard. Trial courts should not attempt in any way to foreclose a party from obtaining effective appellate relief of a disputed decision.

[5] Therefore, this Court did not review the prosecutor's disposition record and relied on the prosecutor's description of the document in deciding the case. However, defendant had the benefit of reviewing the disposition record before preparing his opposition to the prosecutor's appeal.

The prosecutor first argues that the disposition record is attorney work product and therefore not discoverable. Whether a prosecutor's disposition record is privileged from discovery is a question of law. This Court reviews questions of law de novo. *People v Connor*, 209 Mich App 419, 423; 531 NW2d 734 (1995).

Criminal discovery is governed by MCR 6.201, the applicable version of which provides in relevant part:

(B) Discovery of Information Known to the Prosecuting Attorney: Upon request, the prosecuting attorney must provide each defendant:

(1) any exculpatory information or evidence known to the prosecuting attorney;

(2) any police report concerning the case, except so much of a report as concerns a continuing investigation;

(3) any written or recorded statements by a defendant, codefendant, or accomplice, even if that person is not a prospective witness at trial;

(4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and

(5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.

(C) Prohibited Discovery.

(1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination. . . .

Subrule C(2), added by an amendment effective July 1, 1996, outlines a procedure for in camera inspection of records protected by privilege to which a defendant demonstrates a good-faith belief that they "contain material information necessary to the defense."

Interpretation of a court rule is subject to the same basic principles that govern statutory interpretation. *Saint George Greek Orthodox Church v Laupmanis Associates*, 204 Mich App 278, 282; 514 NW2d 516 (1994); *People v Blunt*, 189 Mich App 643, 648; 473 NW2d 792 (1991). We construe a court rule in accordance with "the ordinary and approved usage of the language" and "in light of its purpose and the object to be accomplished by its operation." *Laupmanis, supra* at 282.

MCR 6.201(B) requires the prosecutor upon request to provide defendant with specific types of information, including any exculpatory information within the prosecution's possession. However, MCR 6.201(C) provides that recognized privileges apply in the context of criminal cases. Here, the prosecutor argues that his disposition record was protected from disclosure by the work-product privilege. MCR 2.302(B)(3)(a), which sets forth the work-product privilege, provides:

> Subject to the provisions of subrule (B)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subrule (B)(1) and prepared in anticipation of litigation or for trial by or for another party or another party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only on a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The plain language of the rule indicates that even when a party may obtain materials prepared in "anticipation of litigation" by affirmatively showing a substantial need for the materials and undue hardship in obtaining them by other means, the party may not obtain materials that merely reflect the "mental impressions, conclusions, opinions, or legal theories of an attorney."[6]

Neither MCR 2.302(B)(3)(a) nor MCR 6.201(C) explicitly indicates whether a prosecutor's work product is privileged in the context of criminal discovery. Nor have we found any cases addressing this issue since MCR 6.201 became effective on January 1, 1995.

Before the enactment of MCR 6.201, the scope of discovery in criminal cases was within the discretion of the trial court. *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994). In reviewing this exercise of discretion, this Court has recognized that attorney work product may be privileged from discovery in criminal cases. *People v Johnson*, 168 Mich App 581, 584-585; 425 NW2d 187 (1988) (trial court did not abuse discretion in ordering discovery by the prosecutor of a letter written by the defendant's girlfriend to defense counsel because the letter did not constitute attorney work product); *People v Heard*, 58 Mich

---

[6] We briefly note the interplay of MCR 6.201 and the work-product privilege. MCR 6.201 *requires* the prosecuting attorney to provide, on request, any exculpatory information known to the prosecutor as well as police reports and witness statements. The work-product privilege protects only material prepared in anticipation of litigation for which the party seeking discovery cannot show substantial need and which contains an attorney's mental impressions, conclusions, opinions, or legal theories. MCR 2.302(B)(3)(a). In the context of the requirements of MCR 6.201, application of the work-product privilege would result in a criminal defendant's access to any information to which he is entitled under MCR 6.201, while protecting the prosecutor's opinions and conclusions from discovery.

App 312, 317; 227 NW2d 331 (1975) (prosecutor's compilation of personal observations of prospective jurors by fellow prosecutors is protected by the work-product exception); *People v Martin*, 57 Mich App 84, 85-86; 225 NW2d 174 (1974) (prosecutor's notes containing an analysis of the outcome of prior trials in which prospective jurors had been members of the jury contained attorney work product); *People v Aldridge*, 47 Mich App 639, 649-650; 209 NW2d 796 (1973) (prosecutor's notes containing impressions, theories, or opinions of his staff regarding prospective jurors is protected under the work-product doctrine). These decisions applied the work-product privilege in the context of criminal proceedings.[7]

Further, the public policy principles underlying the work-product privilege in the civil context apply equally in the criminal context. Michigan's civil work-product privilege may be traced to the common-law work-product privilege that was established by the United States Supreme Court in *Hickman v Taylor*, 329 US 495; 67 S Ct 385; 91 L Ed 451 (1947). *In re Subpoena Duces Tecum to the Wayne Co Prosecutor*, 191 Mich App 90, 107, 109; 477 NW2d 412 (1991), remanded 444 Mich 860 (1993), *(On Remand)*, 205

---

[7] We also note *In re Subpoena Duces Tecum to the Wayne Co Prosecutor*, 191 Mich App 90; 477 NW2d 412 (1991), remanded 444 Mich 860 (1993), *(On Remand)*, 205 Mich App 700; 518 NW2d 522 (1994), cited by the prosecutor. In *Subpoena*, the plaintiff brought suit against the City of Detroit and several police officers for the death of her husband following a fight outside a bar. The plaintiff sought discovery of an investigation file compiled by the prosecutor's staff when the prosecutor was considering whether to bring charges against the police officers. The prosecutor was not a party to the action, but sought to quash the subpoena because the information constituted attorney work product. This Court held that the work-product privilege did not extend to nonparties, *Subpoena* at 98, but did not indicate any disapproval of the proposition that the work-product doctrine applied in the context of a criminal prosecution.

Mich App 700; 518 NW2d 522 (1994). The *Hickman* Court stated at 510-511:

> Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.
>
> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interest of the clients and the cause of justice would be poorly served.

In preparing a criminal case, a prosecutor or defense attorney must assemble and sift through information, prepare legal theories, and plan strategy, just as a civil attorney would. As in *Hickman*, waste and inefficient use of resources would occur in criminal cases

if counsel were allowed access to work product because "much of what is now put down in writing would remain unwritten." *Id.* at 511. Also, a similar deletrious effect would occur in criminal cases from the invasion of privacy of an attorney's mental processes and trial preparation in criminal cases. *Id.* Accordingly, the policy considerations set forth in *Hickman* are also implicated in the criminal context with respect to a prosecutor's work product.[8]

On the basis of the public policy principles underlying the work-product privilege, pre-MCR 6.201 criminal cases applying the work-product privilege, and the language of MCR 6.201(C) recognizing the continued applicability of privileges, we conclude that the work-product privilege applies in the context of criminal proceedings to the work product of the prosecutor.[9]

Here, the prosecutor apparently provided defendant all the information that he had concerning the investigation of Ranger Shade, except for the disposition record. Thus, defendant was presumably provided with any information to which he was entitled under MCR 6.201, such as exculpatory information and

---

[8] We note two significant differences between civil and criminal litigation. First, the attorney-client privilege present in a civil case does not exist for a criminal prosecutor. However, the *Hickman* Court's rationale for establishing the work-product privilege did not depend on the existence of an attorney-client privilege. See *Hickman, supra* at 508. Second, there is the obvious distinction between the function of the prosecutor and that of the civil attorney. "The prosecutor's office, as the people's representative, insures the fairness within our system of justice by seeking the ascertainment of truth as a goal in addition to its adversary function." *Aldridge, supra* at 646. However, in light of the prosecutor's obligations under MCR 6.201, we do not believe that this critical function of the prosecutor's office would be compromised by allowing the prosecutor to assert the work-product privilege where appropriate.

[9] Of course, to the extent that the prosecutor may be entitled to discovery of materials in defense counsel's possession, *Johnson, supra* at 584-585, the work-product privilege would apply with equal force.

police reports. However, defendant claims that he was entitled to see the disposition record because he believed it would include information regarding the credibility of Brian Tingley important to defendant's defense. Defendant argues that, because Tingley's testimony was favorable to him, the prosecutor must have decided that Tingley was not credible; otherwise, the prosecutor would have issued a warrant against Shade. Defendant now concedes that the disposition record did not contain information regarding Tingley's credibility. But he claims that he nevertheless is entitled to discover the disposition record because, without it, he will be unable to demonstrate to the jury that the prosecutor failed to properly investigate the charges against Shade before deciding not to issue a warrant. Defendant maintains that, if he is prohibited from introducing this evidence to the jury, it will be left with the inaccurate impression that the prosecutor's office thoroughly investigated the matter before determining that defendant, but not Shade, committed an offense.

The issue before us is whether the disposition record fits within the work-product privilege. The prosecutor provided the following description of the prosecutor's disposition record:

> When a police officer presents reports to the prosecutor's office and requests an arrest warrant, he is assigned to an assistant prosecutor in the Warrants Division. That prosecutor reads the reports and questions the officer regarding the reports and any legal or factual issues arising from the investigation. The assistant prosecutor rarely conducts any investigation, relying on the results of the officer's investigation to decide whether charges will be issued. . . . In making that decision, the assistant prosecutor evaluates the credibility of witnesses, including the officer who is seeking the

warrant and other officers associated with the case, and any civilian or expert witnesses who have provided information to the Officer-in-Charge. He/she also evaluates the presence, or lack of, corroborating or conflicting physical evidence. The prosecutor considers factual, evidentiary and legal issues that are likely to arise if the case should proceed to preliminary examination or trial. If the decision is made not to authorize a warrant, the prosecutor prepares a form explaining his/her reasons for that decision. These are all evaluative considerations. It would be expected that when an assistant prosecutor is attempting to communicate to other assistant prosecutors the factors underlying the decision not to charge or issue the warrant, that a written evaluation of the case could necessarily require a recitation to some specific facts disclosed by the investigating officers. The purpose of this recitation is to explain and support the thought processes of the assistant prosecutor, not to record the results of independent investigations conducted by the prosecutor.

After examining the evidence regarding the actions of Ranger Shade, the prosecutor created the disposition record in order to determine whether to issue a warrant against him for assault and malicious destruction of property. It is generally understood that litigation need not be commenced or threatened before materials may be considered " 'prepared in anticipation of litigation.' " *Great Lakes Concrete Pole Corp v Eash*, 148 Mich App 649, 654, n 2; 385 NW2d 296 (1986) (citation omitted). It is generally sufficient if the prospect of litigation is identifiable, either because of the facts of the situation or the existence of pending claims. *Id.* Although the disposition record in this case was prepared to articulate the reasons for the decision *not* to prosecute, at the time the assistant prosecutor created the record, the course of action that the prosecutor's office would take regarding

whether to charge Ranger Shade remained uncertain. The purpose in articulating the rationale for denial of a requested warrant was to enable the assistant prosecutor's supervisor or the prosecutor himself to review the propriety of the assistant prosecutor's charging decision. Therefore, although the disposition record formally preceded the final charging decision, it was undertaken when litigation remained a genuine possibility. Accordingly, we find that the document was prepared in anticipation of litigation.

Defendant has not shown a "substantial need" for the document. Whether Ranger Shade was prosecuted for the incident at Kensington Park is not relevant to whether defendant feloniously assaulted him with his Range Rover. The prosecution will presumably introduce the testimony of Rangers Grant and Shade at trial, at which time defendant will be able to cross-examine them. Similarly, defendant may introduce the testimony of Brian Tingley. Defendant himself can also testify with regard to his version of the events should he choose to do so. Moreover, defendant may use any other information in the prosecutor's file regarding the decision whether to prosecute Shade, such as police reports and letters. As a result, defendant has ample opportunity, with the information available to him and without using the prosecutor's disposition record, to attempt to establish that Shade's version of the events was not credible or logical. For these reasons, the disposition record is protected from discovery under the work-product privilege. MCR 2.302(B)(3)(a). Moreover, the information is irrelevant. The prosecutor's evaluation of the credibility of a witness should have no possible legitimate effect on a trial—as evidenced by the frequency with

which this Court is asked to overturn trial verdicts because of the prosecutor's arguing in closing that in the prosecutor's opinion one witness or another "told the truth." See *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). If such information has no proper relevance to any possible issue in a case, we fail to see on what basis the defense "needs" the material for trial preparation.

Further, the prosecutor's disposition record is also protected from discovery under the work-product privilege because it reflects the "mental impressions, conclusions, opinions, or legal theories" of the assistant prosecutor leading to the ultimate decision not to issue a warrant. The disposition record consists of the "evaluative considerations" of the prosecutor. Accordingly, the prosecutor's disposition record is privileged from discovery under the work-product privilege on this basis as well.[10]

Further, we note that the constitutional principle of separation of powers confirms our view that the prosecutor's disposition record is not subject to disclosure. "The county prosecutor is a constitutional officer with discretion to decide whether to initiate criminal charges." *People v Herrick*, 216 Mich App 594, 598; 550 NW2d 541 (1996). In so doing, the prosecutor is carrying out an essential executive branch function. "The principle of separation of powers restricts judicial interference with a prosecutor's

---

[10] Because we have determined that the disposition record is protected by the work-product privilege, we have no need to determine whether, as the prosecutor asserts, it is also subject to protection under the deliberative-process privilege. The deliberative- process privilege protects "that portion of a [governmental] report that comprises material of a deliberative or evaluative nature." *In re Subpoena Duces Tecum (On Remand)*, *supra* at 703.

exercise of executive discretion." *Id.*; see, generally, Const 1963, art 3, § 2. Judicial review is appropriate only where prosecutorial decisions are "unconstitutional, illegal, or ultra vires or where the prosecutor has abused the power confided in him." *People v Jackson*, 192 Mich App 10, 15; 480 NW2d 283 (1991) (citations omitted).[11] Absent any such challenge (which may require examination of the prosecutor's thought processes), e.g., an equal protection claim alleging racially biased prosecutions, the ability of the prosecutor to effectively carry out his constitutional responsibilities is undermined when the courts obtain access to documents such as the disposition record.[12] Such access can only dilute the extent to which such documents candidly and thoroughly review the full range of considerations that must be evaluated by the prosecutor before deciding whether to charge a person with a crime.[13]

---

[11] None of these claims have been raised by defendant in the instant matter.

[12] [C]ourts are "properly hesitant to examine the decision whether to prosecute." . . . It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function. "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." [*United States v Armstrong*, 517 US ___; 116 S Ct 1480, 1486; 134 L Ed 2d 687, 699 (1996) (citations omitted).]

[13] Defendant does not directly justify his discovery request on the ground that the prosecutor abused his authority, but, rather, argues that his inability to secure such discovery would raise negative inferences in the mind of the jury concerning the credibility of various witnesses. A defendant could always find an arguable reason why their defense would be helped by information revealing the aptness of the prosecutor's charging decision. To accept such an argument would virtually always enable a creative defense counsel to justify a discovery request of a prosecutor's charging memorandum.

On cross appeal, defendant argues that he was denied his right to a speedy trial. Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. We review trial court factual findings under the clearly erroneous standard. *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996). We review constitutional questions of law de novo. *People v Houstina*, 216 Mich App 70, 73; 549 NW2d 11 (1996). To determine whether a defendant has been denied his right to a speedy trial, this Court considers (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) any prejudice to the defendant. *People v Wickham*, 200 Mich App 106, 109; 503 NW2d 701 (1993). A delay of more than eighteen months is presumed to be prejudicial; the prosecution bears the burden of proving lack of prejudice to the defendant. *Id.* The establishment of a presumptively prejudicial delay "triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id.* at 110.

Defendant was arrested on July 11, 1994. He made a demand for a speedy trial on December 2, 1994. Trial was initially scheduled for January 23, 1995; however, trial was adjourned because another case was in progress. Subsequently, defendant received notices setting the case for trial, but each time the trial was adjourned because another trial was in progress. On February 1, 1996, defendant moved to dismiss the charge against him on the ground that he was denied his right to a speedy trial. The trial court

denied the motion because defendant stipulated the adjournments.

We first consider the length of the delay. Here, the time between defendant's arrest and the motion to dismiss on the basis that he was denied his right to a speedy trial was just over eighteen months. This delay is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice to defendant. *People v Grimmett*, 388 Mich 590, 606; 202 NW2d 278 (1972).

The second factor is the reason for the delay. Because his trial was delayed by the court's congested docket, defendant claims that the reason for delay should be attributable to the prosecution. Although delays inherent in the court system, e.g., docket congestion, "are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Wickham, supra* at 111. Here, the trial court determined that the delay in trial should be attributed to defendant because he stipulated the adjournments. See *People v Hammond*, 84 Mich App 60, 67; 269 NW2d 488 (1978). Defendant claims that he only approved the form of the orders of adjournment, but did not stipulate adjournments because there was no language on the forms regarding "stipulation" and the forms of adjournment did not comply with MCR 2.503(B)(2).[14]

There are six orders for adjournment of trial in the lower court file. On three of the forms, the letters

_____

[14] A motion or stipulation for adjournment under MCR 2.503(B)(2) must state: (a) which party is requesting the adjournment, (b) the reason for it, and (c) whether other adjournments have been granted in the proceeding and, if so, the number granted.

"stip" are handwritten before the words "order for adjournment of trial." On four of the forms, the number of the adjournment is handwritten above the heading of the order. The orders do not indicate which party requested the adjournment. Rather, the forms state: "The Court having been engaged in the trial of another cause . . . it is hereby ordered that the trial of this cause of action is adjourned . . . ." Because the forms were orders, it is not clear whether they can be considered stipulations for adjournment. However, as the trial court stated, if defendant had refused to agree to the adjournments, another judge may have been available to accept the case and proceed with trial.

Defendant also contends that the delay should be attributed to the prosecution because of its refusal to comply with the discovery request. However, defendant has not demonstrated that the prosecution acted in bad faith. Indeed, the prosecution's claim that its disposition record was not discoverable was meritorious as concluded above. We reject the notion that a prosecutor may contest a defense motion only at the possible expense of violating the right to a speedy trial. The rule is that the time needed to adjudicate defense motions is charged to the *defendant. People v Goode*, 106 Mich App 129; 308 NW2d 448 (1981); *People v Rosengren*, 159 Mich App 492; 407 NW2d 391 (1987).

The third factor is defendant's assertion of his right to a speedy trial. Defendant asserted his right to a speedy trial by demanding it approximately five months after he was arrested.

Finally, the fourth factor requires that defendant be prejudiced by the delay. There are two types of

prejudice: prejudice to the person and prejudice to the defense. *Wickham, supra* at 112. Because defendant was not incarcerated during the delay between arrest and trial, there was no prejudice to his person. *Id.* However, defendant claims that his defense was harmed by the delay. He argues generally that delay causes witnesses' memories to fade and that it caused him financial burdens. However, such general allegations of prejudice are insufficient to establish that he was denied his right to a speedy trial. See *People v Cooper*, 166 Mich App 638, 655; 421 NW2d 177 (1987); *People v Wyngaard*, 151 Mich App 107, 111-112; 390 NW2d 694 (1986). Defendant also claims that he suffered mental anxiety and was financially burdened because of the delay. However, anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial. *People v Jackson*, 171 Mich App 191, 201; 429 NW2d 849 (1988).

Although the delay of eighteen months is presumed to be prejudicial to defendant, in light of the fact that defendant agreed to the adjournments of trial (or at least did not object to them), the fact that he has demonstrated no prejudice resulting from the delay, and because defendant is causally responsible for some of the delay, we do not believe that defendant was denied his right to a speedy trial. Therefore, we do not believe that dismissal is warranted in this case.

For these reasons, we reverse the trial court's order granting discovery of the prosecutor's disposition record and affirm the trial court's denial of defendant's motion to dismiss on speedy trial grounds.