*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

WILLIAM BOOKER, JR.,

      Defendant-Appellant.

UNPUBLISHED
February 15, 2024

No. 360745
Berrien Circuit Court
LC No. 2019-002184-FH

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of witness tampering, MCL 750.122(7)(b), and assault and battery, MCL 750.81(1). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 46 months to 20 years' imprisonment for witness tampering and 93 days' in jail for assault and battery. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case stems from allegations made by defendant's on-and-off girlfriend, RB, that in June 2019, she answered the door for defendant at her apartment when he attacked her. During this altercation, RB's cousin, MB, and a third person, a friend, attempted to break up the attack, resulting in defendant hitting MB. RB testified that this altercation ended after she retrieved a knife from her kitchen and stabbed defendant in the neck. Defendant was charged with third-offense domestic assault, MCL 750.81(2), assault and battery, MCL 750.81(1), and first-degree home invasion, MCL 750.110(a), for this incident.

After defendant was arraigned, his counsel requested a bond. In light of a prior failure to appear and an escape from custody, the court imposed a $25,000 cash or surety bond that defendant was unable to post. Additionally, defendant was ordered not to contact the victims. Nonetheless, when defendant was incarcerated for the underlying charges, he called RB from jail and, over the course of numerous phone calls between July 2019 and September 2019, told her not to come to court. Defendant also promised to pay for the damages caused to RB's property. When defendant received treatment for his injuries, he made various threats to harm RB, that prompted medical personnel to contact RB and warn her. RB was not scared because defendant was in jail; however,

-1-

she felt harassed and intimidated by his repeated jail phone calls requesting that she not come to court and for an affidavit. In light of defendant's actions, the trial court granted the prosecution's request to amend the information to add a charge of witness tampering.

Defendant was arraigned in June 2019, but his trial was delayed for a variety of reasons. Defense counsel requested a forensic evaluation in the fall of 2019. A finding that defendant was competent occurred in March 2020. A short time later, the trial court was shut down because of the Covid-19 pandemic. Additionally, defendant requested court-appointed counsel, but discharged the three public defenders that were assigned to him. Because defendant exhausted all the public defenders, the trial court appointed a private attorney to represent him.[1] During various hearings, defendant became belligerent toward his counsel, the trial court, or both. He swore at his counsel and the presiding judge and questioned their competency. Defendant refused to participate in or attend hearings, fired his appointed counsel, failed to cooperate or listen to his rights during the waiver of counsel and the appointment of standby counsel, and left the video hearing room while hearings were in progress. As a result of defendant's behavior, three hearings were held to complete his preliminary examination for the witness tampering charge. Although defendant claimed that his right to a speedy trial was violated, the trial court denied his motion. Additionally, defendant's request to be released on personal recognizance was denied, with the trial court determining that defendant posed a danger to RB and the community.

Defendant's jury trial was held in December 2021. At defendant's trial, the prosecution played three of defendant's jail phone calls to RB for the jury. RB testified that defendant's phone calls did not dissuade her from testifying at trial. Defendant testified that he made these phone calls and told RB not to appear for trial because he was the victim and there was no reason for her to come to court and perjure herself.

Notably absent from defendant's trial was Benton Harbor Public Safety Department Sergeant William Althouse, who investigated the home invasion and assaults at RB's apartment.[2] Sergeant Althouse refused service of process for his subpoena to appear at trial. The prosecution informed the trial court that Sergeant Althouse was sick and on medical leave from work at the time. During the prosecution's attempts to serve him, Sergeant Althouse refused to answer the door. Ultimately, Sergeant Althouse did not appear for trial. Consequently, defendant requested and received M Crim JI 5.12, permitting the jury to draw a negative inference from the witness's absence.

Even so, the jury convicted defendant of misdemeanor assault of MB and witness tampering. But, he was acquitted of the home-invasion charge and domestic-assault charge pertaining to the entry into RB's apartment and his assault upon her. Defendant's request for postjudgment relief was denied. Defendant now appeals.

---

[1] Ultimately, defendant sought to be represented by out-of-state counsel. But, this proposed counsel did not satisfy the requirements to be admitted pro hac vice.

[2] Sergeant Althouse was also scheduled to testify at the first preliminary examination but was called away because of a "family matter."

## II. RIGHT TO A SPEEDY TRIAL

Defendant asserts that he was denied his right to a speedy trial. We disagree.

The question of whether a defendant was deprived of his right to a speedy trial presents a question of constitutional law subject to de novo review. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The trial court's factual findings are reviewed for clear error. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted).

Both the United States Constitution and Michigan Constitution guarantee a defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. In Michigan, this right is enforced by statute and by court rule. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006), citing MCL 768.1 and MCR 6.004(A). The purpose of this guarantee is "to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *People v Sierb*, 456 Mich 519, 531 n 19; 581 NW2d 219 (1998) (quotation marks and citation omitted). Our Courts apply the four-part balancing test articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 696 (1982), to determine if a pretrial delay violated a defendant's right to a speedy trial. *Williams*, 475 Mich at 261. This test requires the court to balance the following factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. No single factor is "either a necessary or sufficient condition to" a meritorious speedy-trial claim. *Barker*, 407 US at 533. When a delay is 18 months or more, prejudice is presumed and the burden is placed on the prosecution to rebut that presumption. *Williams*, 475 Mich at 262; *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999).

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. "[T]he length of delay is not determinative of a speedy trial claim . . . ." *Cain*, 238 Mich App at 112 (quotation marks and citation omitted). In this case, defendant was already incarcerated for an alleged personal protection order violation when he was arraigned for charges of home invasion, domestic assault, and assault and battery on June 20, 2019. Likewise, defendant remained incarcerated when the prosecution amended the information on October 31, 2019, to add a charge for witness tampering. Defendant ultimately had his trial for all charges from December 7, 2021 through December 10, 2021. Accordingly, there was an approximate 29-month delay between defendant's arraignment for home invasion, domestic assault, and assault and battery, and his trial, and an approximate 25-month delay between defendant being charged with witness tampering, and his trial. Because the delays in this case were longer than 18 months, prejudice is presumed unless rebutted by the prosecution and examination of the other three factors is required to determine whether defendant was deprived of his right to a speedy trial. See *id*.

The period of the delay and the party responsible for the delay, the prosecution or defendant, must be examined. See *id*. at 113. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and

are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Gilmore*, 222 Mich App at 460 (quotation marks and citation omitted). In the context of the 180-day rule, this Court has concluded that delay caused by the Michigan Supreme Court's decision to suspend jury trials during the COVID-19 pandemic was neutral or not attributable to either party. See *People v Witkoski*, 341 Mich App 54, 63-64; 988 NW2d 790 (2022). A defendant's request for adjournments and time spent adjudicating defendant's motions are attributable to defendant. See *Cain*, 238 Mich App at 113. Further, the withdrawal of defense counsel is not attributable to the prosecution. See *People v Collins*, 388 Mich 680, 691; 202 NW2d 769 (1972). The court may hold the prosecution responsible for unexplained or otherwise unattributable delays. *People v Lown*, 488 Mich 242, 262; 794 NW2d 9 (2011).

Defendant was originally scheduled for trial in November 2019, but the trial was delayed when defendant engaged in witness tampering and needed to be arraigned for the additional charge. This first delay was attributable to defendant. Additionally, delay occurred between November 2019 and March 2020, because of defendant's competency examination and determination. The record indicates that defense counsel requested this hearing. Accordingly, this delay is also attributable to defendant. See *Cain*, 238 Mich App at 113.[3] After defendant was deemed competent for trial, Berrien County halted jury trials from April 2020 through at least May 2021.[4] The time that trial courts could not conduct jury trials because of COVID-19 is neutral and unattributable to either party. See *Witkoski*, 341 Mich App at 63. The remainder of the delays in this case were primarily attributable to defendant's inability to cooperate with multiple attorneys and his disruptions in the trial court. Accordingly, this factor does not favor defendant.

The third factor is defendant's assertion of the right. Defendant asserted his right to a speedy trial several times in the trial court. Defendant first asserted his right to a speedy trial in April 2020. However, the trial court did not rule on this motion because the attorney who submitted it withdrew from representing defendant. Defendant next moved for release on personal recognizance in September 2020, premised on a speedy-trial claim. The trial court denied this

---

[3] Defendant contends that he never challenged his competency. However, at the arraignment on June 20, 2019, the trial court noted that the attempt to arraign defendant on June 19, 2019 failed because defendant did not appropriately respond to questions and made questionable statements. At that time, the trial court noted that defense counsel may have to raise the issue of competency, and defense counsel did seek the forensic evaluation. And, at the arraignment hearing on November 5, 2019, defendant failed to follow procedure to allow the hearing to occur. The trial court noted that defendant refused to listen. Defendant responded, "[E]very time I come I'm gonna mess up the record." The court noted that it would try "another day" to address the matter. And, when defendant began to represent himself, he sought to call other circuit judges as witnesses. The trial court noted that defendant would have to submit an offer of proof to demonstrate the need to call those witnesses. If the court found that the testimony of those witnesses was relevant, the trial court noted that it would be disqualified from hearing the trial, and the case would be transferred to another county. Defendant admitted on the record that the transfer of the case was his objective.

[4] During various hearings, the prosecutor explained that vaccination rates, social distancing issues, and infection levels determined whether the state court administrator allowed jury trials to be held.

motion.[5]  Finally, in April 2021, defendant moved *in propria persona* to dismiss because he was denied a speedy trial, but the trial court denied the motion. Defendant did assert his right although his forensic evaluation and repeated firings of his appointed counsel prevented his trial from being held.[6]

The final factor is prejudice to the defendant.  A defendant may face two types of prejudice, "prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted).  Prejudice to the defense is the more serious inquiry of the two.  *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994).  "[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich App 478, 494; 660 NW2d 405 (2003).  General allegations of prejudice are insufficient to establish prejudice.  See *Gilmore*, 222 Mich App at 462.  Further, "anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *Id*.

Defendant asserts that he was personally prejudiced because excessive pretrial incarceration led to stress, loss of contact with family and friends, and loss of income.  Specifically, defendant asserts that he was financially limited to retain his own attorney and cites to the inability to retain out-of-state counsel.  However, the record indicates that out-of-state counsel was removed from this case because he could not find local counsel to comply with pro hac vice requirements as opposed to defendant's inability to pay for representation.  See MCR 8.126.  Aside from defendant's unsupported assertion that he could not afford to pay this attorney, defendant's claims regarding personal prejudice are general.  Accordingly, defendant has failed to establish prejudice such that he was denied a speedy trial in relation to his person.  See *Gilmore*, 222 Mich App at 462.

Defendant also asserts that the delay caused a crucial witness, Sergeant Althouse, to be absent from trial.  Specifically, he contends that Sergeant Althouse would testify that RB lied to Sergeant Althouse when she provided a statement to him and that Sergeant Althouse's signature on the complaint and warrant was essentially a forgery.  Finally, defendant submits that cross-

---

[5] The trial court determined that defendant was arraigned on June 18, 2019.  However, the criminal action was tolled on November 18, 2019, until defendant was deemed competent on March 6, 2020.  The trial court determined that defendant was in jail for 190 days, or just over six months, when the Covid-19 restrictions that precluded jury trials took effect.  The trial court also denied defendant's request to be released on personal recognizance, determining that defendant posed a danger to the victim and the community.

[6] Defendant claimed that he did not request a competency examination or the appointment of counsel, and therefore, the delays caused by the forensic evaluation and the firing and appointment of new counsel should not be attributed to him.  Defendant's claim is belied by his acceptance of appointed counsel and his acceptance and participation in the forensic evaluation.  Indeed, defendant repeatedly refused to come to or continue to participate in hearings when he did not want to do so.

examination of Sergeant Althouse was necessary for his defense of the witness-tampering conviction. None of these assertions support a finding of prejudice.

Even before addressing defendant's assertions of prejudice, we note that there is insufficient evidence in the record to connect Sergeant Althouse's refusal to appear for trial to the delay in proceedings. Defendant did not assert that testimony that Sergeant Althouse could provide was diminished by loss of memory. Instead, the record indicates that the parties knew where Sergeant Althouse was, he was on medical leave, and that he simply refused to appear for trial.

Assuming without deciding that Sergeant Althouse's refusal to appear for trial was caused by the delay, his investigation of the purported domestic assault and home invasion for which defendant was acquitted was unrelated to defendant's witness-tampering charge. As such, defendant was not prejudiced by his inability to examine Sergeant Althouse on that charge. Defendant was charged with witness tampering for phone calls that he made to RB between July and September 2019, during his incarceration. Nothing in the record suggests that Sergeant Althouse had any knowledge of the circumstances behind the investigation of defendant's witness-tampering conviction.[7]

Balancing these four factors, defendant has not demonstrated that his convictions should be vacated based on a violation of his right to a speedy trial. In defendant's favor, there were delays of 25 and 29 months between his arraignments and his trial. Further in his favor, defendant asserted his right to a speedy trial several times throughout the lower court proceedings. But the reasons for the delay and the lack of prejudice weigh heavily against defendant given that the prosecutor rebutted the presumption of prejudice. The reasons for the delay were mostly attributable to COVID-19, a neutral factor, see *Witkoski*, 341 Mich App at 63, and defendant's inability to cooperate with his attorneys or participate in the trial court proceedings without causing disruptions by swearing at the participants and leaving the proceedings. These latter reasons for delay are attributable to defendant. Finally, defendant was unable to show that his defense was prejudiced by the delay and only claimed general prejudice to his person. When balancing these factors, defendant has not established a violation of his right to a speedy trial. Accordingly, the

---

[7] Curiously, defendant represented himself during the continuation of the preliminary examination. At that time, defendant sought to call circuit court judges and the prosecutor as witnesses. He never sought to call Sergeant Althouse as a witness, and thus, preserve the testimony in the event Sergeant Althouse was later unavailable at trial. Moreover, although defendant makes blanket assertions addressing an inability to cross-examine Sergeant Althouse regarding RB's statements and the signature on the complaint, defendant failed to obtain an affidavit to substantiate his theories. His blanket assertions are insufficient to support his claim. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). And, the claim that the testimony was necessary to prevent an "illogical" acquittal of home invasion and domestic assault is without merit. A jury may render an inconsistent verdict. See *People v Putnam*, 309 Mich App 240, 251; 870 NW2d 593 (2015). Finally, we note that RB turned a letter over to the prosecutor that supported the witness tampering claim. And, the jail phone calls were presented to the prosecutor through jail staff. There is no record evidence correlating Sergeant Althouse to an investigation of the witness tampering charge such that his failure to appear at trial could be deemed prejudicial.

trial court did not clearly err in denying defendant's speedy-trial challenge. *Williams*, 475 Mich at 262; *Cain*, 238 Mich App at 112.

### III.  SENTENCING

Next, defendant contends that the trial court imposed a retaliatory sentence in response to defendant's rejection of a plea deal and the exercise of his right to a jury trial. We disagree.

A defendant's assertion that a sentence is retaliatory in response to him exercising his right to a jury trial is a constitutional issue that we review de novo. See *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011).  "A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial."  *Id*.  But, "[i]t is not per se unconstitutional for a defendant to receive a higher sentence on a trial conviction than was promised him if he would plead guilty."  *People v Rivers*, 147 Mich App 56, 60-61; 382 NW2d 731 (1985).

The record does not support defendant's contention that the trial court imposed a harsher sentence because defendant rejected a plea deal and chose to proceed to trial.  The prosecution offered defendant several pleas, including a final plea deal in which defendant would plead no contest to third-offense domestic assault in exchange for the dismissal of all other charges, including a fourth-offense habitual offender supplement.  In this plea deal, the prosecution estimated that defendant's minimum sentencing range was 10 to 23 months' imprisonment.  The trial court also offered defendant a *Cobbs* agreement[8] that would have permitted him to be sentenced to time served.  When the trial court attempted to discuss the *Cobbs* agreement, defendant repeatedly interrupted the trial court.  In an attempt to prevent further interjections and to capture defendant's attention, the trial court noted that the *Cobbs* agreement would allow defendant to go home and sleep in his own bed.  Defendant rejected these offers.  Ultimately, defendant was convicted of assault and battery and witness tampering.  The trial court sentenced defendant to 46 months to 20 years' imprisonment for witness tampering.  The trial court explained:

> This defendant, not satisfied . . . with the criminal justice system manipulated, cajoled, and encouraged this alleged victim [RB] not to testify against him.  This will not be tolerated and that's why the Legislature in Michigan has decided that this is a felony, and that's why this defendant deserves punishment for this behavior.

Nothing in the record suggests that the trial court imposed the sentence of 46 months to 20 years' imprisonment in retaliation for defendant's decision to reject the final plea deal and proceed with trial.  Witness tampering, MCL 750.122(7)(b), is a Class D offense with a typical maximum sentence of 10 years, MCL 777.16f.  However, because defendant was sentenced as a fourth-offense habitual offender, the maximum sentence was enhanced to 20 years.  See MCL 777.21(3)(c).  Defendant's minimum sentencing guidelines range was 10 to 46 months'

---

[8] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

imprisonment. Defendant was sentenced within that range. Sentences within the minimum sentence guideline are presumed to be reasonable. *People v Posey*, 512 Mich 317, 351-352; ___NW2d ___ (2023). Defendant risked being sentenced to a lengthy prison term when he rejected the various plea offers while on notice of his status as a habitual fourth-offender. Ultimately, the trial court articulated a nonretaliatory reason on the record for imposing defendant's sentence, and the plea deals that the prosecution and trial court offered defendant was for third-offense domestic assault and not witness tampering. Nothing in the record supports defendant's contention that the trial court sentenced defendant more harshly in retaliation for rejecting a plea deal and proceeding to trial. Accordingly, the trial court did not err in denying defendant's motion to correct an invalid sentence.

## IV. MOTION FOR DIRECTED VERDICT

Next, defendant contends that there was insufficient evidence to convict him of witness tampering under MCL 750.122(6) because he believed that he was innocent of the underlying charges and he merely requested that RB not attend court. We disagree.

We review de novo a trial court's decision denying a motion for a directed verdict. *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014). Specifically, we review "to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). This Court must elicit all reasonable inferences and make credibility determinations that support the jury verdict. *People v Thurmond*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361302), slip op at 2. Further, proof of the elements of the crime may be satisfied by circumstantial evidence and reasonable inferences arising therefrom. *Id*. These standards, traditionally applied to challenges to the sufficiency of the evidence, also apply to motions for a directed verdict or motions for judgment notwithstanding the verdict. *Id*. "Due process requires that the evidence show guilt beyond a reasonable doubt in order to sustain a conviction." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Defendant was charged with witness tampering under MCL 750.122(6).[9] To convict an individual under this subsection, the prosecution must prove beyond a reasonable doubt that the defendant:

> (1) committed or attempted to commit (2) an act that did not consist of bribery, threats or intimidation, or retaliation as defined in MCL 750.122 and applicable case[]law, (3) but was any act or attempt that was done willfully (4) to impede, interfere with, prevent, or obstruct (5) a witness's ability (6) to attend, testify, or

---

[9] MCL 750.122(6) states:

> A person shall not willfully impede, interfere with, prevent, or obstruct or attempt to willfully impede, interfere with, prevent, or obstruct the ability of a witness to attend, testify, or provide information in or for a present or future official proceeding.

provide information in or for a present or future official proceeding (7) having the knowledge or the reason to know that the person subjected to the interference could be a witness at any official proceeding. [*People v Greene*, 255 Mich App 426, 442-443; 661 NW2d 616 (2003).]

In *Greene*, this Court defined a "witness's ability" for purposes of the subsection:

Ability is the power or capacity to do or act physically, mentally, legally, morally, or financially. This is a broad description of the human facility to act, not at all limited to the logical ways in which a tamperer might try to interfere with a witness, including the witness's ability to travel, appear at the place designated for an "official proceeding," or biological ability to recall information or provide testimony, whether spoken, written, signed, or communicated in another manner. This breadth implies that subsection 6 makes illegal *any* act or attempt, no matter its form, to keep the witness from "attend[ing], testify[ing], or provid[ing] information in or for a present or future official proceeding by affecting the witness's ability to do so. [*Id*. at 441 (alterations in original; footnote omitted).]

The Court further explained that "a request, alone, not to attend a hearing or a stated desire that a witness not attend a hearing would be unlawful under MCL 750.122(6)." *Id*. at 447. But, a question of fact may exist when a defendant attempts to dissuade a witness from providing testimony but the witness appears at the hearing anyway. *Id*. at 447-448. Specifically, when a defendant was aware that a witness would present preliminary examination or trial testimony and then willfully attempted to interfere with the witness's intent to attend the hearing, by explicitly telling the witness not to attend, by exploiting the witness's feelings for the defendant, and by downplaying the consequences of disobeying a subpoena, the fact-finder must determine whether the defendant's conduct "fit" within the witness intimidation statute's attempt language. *Id*.

Examining the evidence presented at trial in a light most favorable to the prosecution, a rational trier of fact could find defendant guilty of witness tampering under MCL 750.122(6). Defendant was ordered not to have contact with RB as a condition of bond. After defendant was arraigned and told not to have contact with RB, defendant called her from jail. Three of these recordings from July 3, 2019, July 26, 2019, and September 21, 2019, were played at trial. During these three calls, defendant told RB numerous times not to come to court, using varying tactics. These tactics included claiming that RB would be subject to a perjury charge and a substantial prison term, appealing to RB's sympathy in light of defendant's potential penalty, applying social pressure by having other individuals contact RB, and asserting that the judicial system was out to get both defendant and RB.

Witness tampering prohibits conduct by a defendant that acts to impede, interfere with, prevent, or obstruct the witness's ability to testify at trial. See *id*. at 440-441. However, defendant's actions need not be successful to be criminalized under MCL 750.122(6) because this subsection includes both successful interference and an attempt to interfere. See *id*. at 440. The witness's "ability" to testify includes her "power of capacity to do or act physically, mentally, legally, morally, or financially." *Id*. at 441. In this case, defendant's conduct was aimed at RB's moral ability to testify when he attempted to convince her that she would face perjury charges if she testified and that the judicial system was out to get both defendant and RB. He also attempted

to play on her sympathy for him by repeatedly asserting the possible penalties that he faced, and he engaged in social pressure when he had other community members contact RB to pressure her not to appear in court. A reasonable trier of fact could determine that each of these tactics was an attempted interference with RB's moral ability to attend court by persuading her that the right thing to do was skip the criminal proceedings.[10]

## V. GREAT WEIGHT OF THE EVIDENCE

Next, defendant contends that his guilty verdict for witness tampering was against the great weight of the evidence because he steadfastly believed that he was innocent of home invasion and domestic assault and that he was calling the person who assaulted *him* to tell her not to come to court. We disagree.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622; 632; 912 NW2d 60 (2018). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds in *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998). Absent exceptional circumstances, however, a reviewing court may not substitute its view of the credibility of witnesses for that of the jury. See *Lemmon*, 456 Mich at 642.

As stated in the previous issue, sufficient evidence supported defendant's conviction of witness tampering. Nothing in the elements of MCL 750.122(6), see *Greene*, 255 Mich App at 442-443, suggests that defendant's personal belief that he was innocent of the underlying crimes that he was charged with excused his attempt to interfere with a witness testifying in the criminal case. Accordingly, we reject defendant's contention that the jury's verdict was against the great weight of the evidence.

## VI. JURY INSTRUCTION

Finally, defendant argues that the trial court erred by failing to include defendant's theory for why Sergeant Althouse refused to appear at trial in its recitation of M Crim JI 5.12. Defendant waived this issue and, therefore, extinguished any error.

Waiver is distinct from forfeiture. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). Whereas forfeiture is the "failure to make the timely assertion of a right." *Id*. (quotation marks and citation omitted). A defendant "who waives his

---

[10] Defendant also alleged that witness tampering was a predicate offense for the other charges. However, he abandoned this claim by failing to cite any authority in support or rationalize his claim. See *Payne*, 285 Mich App at 195.

rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted).

The Michigan Supreme Court explained that a defendant must affirmatively express satisfaction with the trial court's conduct to waive:

> In *People v Fetterley*, 229 Mich App 511, 518-519, 583 NW2d 199 (1998), the trial court denied the jury's request for a transcript of the testimony of one of the witnesses. The court explained that it did not have a transcript and instructed the jury to remember the testimony as best it could. Both attorneys indicated that they had no objection to the trial court's decision. *Id*., 519. Rejecting the defendant's argument that this constituted an error requiring reversal pursuant to MCR 6.414(H), the Court of Appeals explained, defense counsel *expressly acquiesced* to the court's handling of the jury's request. [*Carter*, 462 Mich at 214 (quotation marks and citation omitted; emphasis added).]

This Court has concluded that "[w]hen the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). The Michigan Supreme Court has also affirmed a waiver when the discussion and decision to provide jury instructions occurred at both the start and end of the jury trial. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

In the instant case, defendant waived appellate review of this issue. When examining the entire record, defendant affirmed the trial court's recitation of M Crim JI 5.12 at various times throughout the trial. First, defendant requested that the trial court read M Crim JI 5.12 to the jury. In response, the trial court stated the following:

> Sergeant William Althouse is a missing witness whose appearance was the responsibility of the prosecution, and may infer that this witness's testimony would have been unfavorable to the prosecution's case. Is that the instruction you're requesting?

Defendant stated, "Yes, your Honor," to affirm this instruction. Later, the prosecution sought to call a witness to explain to the jury why Sergeant Althouse refused to appear for trial. Defendant objected to the prosecution's request. After both parties rested, the parties reviewed the jury instructions with the trial court once more. The discussion included the trial court reading M Crim JI 5.12 again, and asking both parties whether they wanted anything else added to the jury instructions. Both parties affirmed that the full jury instructions were sufficient. Defendant affirmed the proposed jury instruction a final time during jury deliberations when the jury inquired why Sergeant Althouse was not present.

This record shows that defendant affirmatively approved the jury instructions twice before the instructions were read to the jury. Defendant specifically approved M Crim JI 5.12 a third time when the trial court reread it to the jury in response to its question. Based on this record, defendant waived any appellate challenge to the instruction. See *Kowalski*, 489 Mich at 504 n 26.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle